RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0120P (6th Cir.)
File Name: 03a0120p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

STATE OF TENNESSEE and
TENNESSEE DEPARTMENT OF
ENVIRONMENT AND
CONSERVATION,
     *Plaintiffs-Appellants,*

     *v.*

UNITED STATES DEPARTMENT
OF TRANSPORTATION,
RESEARCH AND SPECIAL
PROGRAMS ADMINISTRATION,
and ASSOCIATION OF WASTE
HAZARDOUS MATERIALS
TRANSPORTERS,
     *Defendants-Appellees.*

No. 01-5373

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 99-01126—Todd J. Campbell, District Judge.

Argued: September 17, 2002

Decided and Filed: April 23, 2003

Before: SILER, DAUGHTREY, and GILMAN, Circuit
Judges.

1

---

## COUNSEL

**ARGUED:** Barry Turner, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants. Michael S. Raab, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Barry Turner, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants. Michael S. Raab, Mark B. Stern, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Frazer C. Hilder, UNITED STATES DEPARTMENT OF TRANSPORTATION, RESEARCH AND SPECIAL PROGRAMS ADMINISTRATION, Washington, D.C., Peter J. Plocki, UNITED STATES DEPARTMENT OF TRANSPORTATION, OFFICE OF THE GENERAL COUNSEL, Washington, D.C., Grant C. Glassford, James E. Gaylord, STOKES, BARTHOLOMEW, EVANS & PETREE, Nashville, Tennessee, for Appellees. Lawrence W. Bierlein, McCARTHY, SWEENEY & HARKAWAY, Washington, D.C., for Amici Curiae.

---

## OPINION

---

   MARTHA CRAIG DAUGHTREY, Circuit Judge. In this appeal, the State of Tennessee and the Tennessee Department of Environment and Conservation challenge the district court's decision upholding the United States Department of Transportation's disallowance of an annual fee imposed by Tennessee on interstate hazardous waste transporters under the Tennessee Hazardous Waste Management Act, TENN. CODE ANN. § 68-212-203(a)(6). The district court held that the state statute authorizing the fee is preempted by the federal Hazardous Materials Transportation Act, 49 U.S.C. §§ 5101 *et seq.* In response to the claim that the federal agency's action was barred by sovereign immunity, the district court also held that the determination by the United

States Department of Transportation (the USDOT) was an "executive administrative action" that was not subject to either (1) the doctrine of state sovereign immunity imbedded in Eleventh Amendment, *see Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), or (2) that version of *extra-constitutional* immunity doctrine lately recognized by the United States Supreme Court in *Alden v. Maine*, 527 U.S. 706 (1999). After judgment in the federal agency's favor was entered below, the Supreme Court announced its decision in *Federal Maritime Commission v. South Carolina State Ports Authority*, 535 U.S. 743, 122 S. Ct. 1864 (2002), holding that the State of South Carolina was immune from a complaint by a private party because the agency "adjudication" used to resolve the complaint administratively "walked, talked, and squawked" like a lawsuit. *Id.* at ___, 122 S. Ct. 1873. Hence, our task in this case is to determine whether the agency determination made by the USDOT meets the "walk, talk, and squawk test" of *Federal Maritime Commission*. If so, the State of Tennessee would be immune from the proceedings instituted in this case, and the district court's judgment would necessarily have to be reversed.

For the reasons set out below, we conclude that reversal in this case is not warranted, and we therefore affirm the judgment of the district court.

## BACKGROUND

In 1975, Congress passed the Hazardous Materials Transportation Act, 49 U.S.C. §§ 5101-5127, pursuant to the Commerce Clause in Article I of the United States Constitution. The stated intent of the Act is "to provide adequate protection against the risk to life and property inherent in the transportation of hazardous material in commerce by improving the regulatory and enforcement authority of the Secretary of Transportation." 49 U.S.C. § 5101. In an effort to create a coherent approach to addressing the problems posed by the interstate transportation of hazardous material (known in the trade as "hazmat"),

Congress vested central authority over "hazmat" regulation in the USDOT. Consistent with this centralization of authority, Congress determined that federal preemption of state and local laws inconsistent with the Act was necessary and, therefore, promulgated a section of the Act entirely devoted to preemption concerns. Section 5125(a) sets out the criteria for preemption:

> (a) General. Except as provided in subsections (b), (c), and (e) of this section and unless authorized by another law of the United States, a requirement of a State, political subdivision of a State, or Indian tribe is preempted if –
>
> > (1) complying with a requirement of the State, political subdivision, or tribe and a requirement of this chapter, a regulation prescribed under this chapter, or a hazardous materials transportation security regulation or directive issued by the Secretary of Homeland Security is not possible; or
> >
> > (2) the requirement of the State, political subdivision, or tribe as applied or enforced, is an obstacle to accomplishing and carrying out this chapter, or a regulation prescribed under this chapter, or a hazardous materials transportation security regulation or directive issued by the Secretary of Homeland Security.

49 U.S.C. § 5125(a).[1] Obviously, not all state requirements are preempted, and the procedure for determining whether preemption will apply to a particular state provision is found in subsection (d):

---

[1] This opinion quotes the statute as it currently reads. Although it was amended on November 25, 2002, Pub. L. 107-296, as part of the Homeland Security Act of 2002, the changes do not affect the substantive analysis in this case.

(d)(1) A person (including a State, a political subdivision of a State or Indian tribe) directly affected by a requirement of a State, political subdivision, or tribe may apply to the Secretary, as provided by regulations prescribed by the Secretary, for a decision on whether the requirement is preempted by subsection (a),(b)(1), or (c) of this section. The Secretary shall publish notice of the application in the Federal Register. The Secretary shall issue a decision on an application for a determination within 180 days after the date of the publication of the notice of having received such application, or the Secretary shall publish a statement in the Federal Register of the reason why the Secretary's decision on the application is delayed, along with an estimate of the additional time necessary before the decision is made. After notice is published, an applicant may not seek judicial relief on the same or substantially the same issue until the Secretary takes final action on the application or until 180 days after the application is filed, whichever occurs first.

(2) After consulting with States, political subdivisions of States, and Indian tribes, the Secretary shall prescribe regulations for carrying out paragraph (1) of this subsection.

(3) Subsection (a) of this section does not prevent a State, political subdivision of a State, or Indian tribe, or another person directly affected by a requirement, from seeking a decision on preemption from a court of competent jurisdiction instead of applying to the Secretary under paragraph (1) of this subsection.

49 U.S.C. § 5125(d). The party seeking such a decision "may bring a civil action in an appropriate district court of the United States for judicial review of the decision of the Secretary" under § 5125(f).

When the subject of the preemption decision is the validity of a fee imposed by the state on "hazmat" transporters, as was the case here, § 5125(g) sets out the following test:

A State, political subdivision of a State, or Indian tribe may impose a fee related to transporting hazardous material only if the fee is fair and used for a purpose related to transporting hazardous material, including enforcement and planning, developing, and maintaining a capability for emergency response.

49 U.S.C. § 5125(g).

The implementing regulations of § 5125 provide that those who seek a preemption determination concerning a state "hazmat" requirement may apply to the Associate Administrator of the USDOT's Research and Special Programs Administration. *See* 49 C.F.R. § 107.203(a) and (b). The applicant must also serve a copy of the application on the state, notifying state officials of their right to submit comments regarding the application to the Associate Administrator. *See* 49 C.F.R. § 107.205(a). In addition, the Associate Administrator is required to publish notice of the application in the Federal Register, inviting comments. *See* 49 C.F.R. § 107.205(b). All parties submitting comments are required to provide those comments to the applicant as well, providing notice of service to the Associate Administrator. *See* 49 C.F.R. § 107.205(c). After receiving comments, the Associate Administrator is free to conduct an investigation and may or may not convene a hearing. *See* 49 C.F.R. § 107.207. Upon reaching a determination, the Administrator issues a written statement setting out relevant facts and law to all involved parties. The determination is subject to reconsideration upon the motion of a party. Thereafter it is placed on file in the public docket, printed in the Federal Register, and considered a final agency determination on the disputed question of preemption. *See* 49 C.F.R. § 107.209. Within 60 days of publication, the parties are free to seek

judicial review of the determination in a federal district court. *See* 49 U.S.C. § 5125(f); 49 C.F.R. § 107.213.

In this case, the Association of Waste Hazardous Materials Transporters filed an application with the Associate Administrator in March 1998, seeking a preemption determination pursuant to § 5125(d). The Association challenged the validity of TENN. CODE ANN. § 68-212-203(a)(6), a provision of the Tennessee Hazardous Waste Management Act that levies a flat $650 annual fee on all persons issued hazardous waste transportation permits by the state. The Association's application was served upon both state officials and the USDOT Administrator and printed in the Federal Register, giving interested parties notice and an invitation to submit comments. *See* 63 Fed. Reg. 17479 (April 9, 1998). After the submission of comments by the state and rebuttal comments by the Association, the Associate Administrator issued a decision in favor of the Association, concluding that the state law provision was preempted by federal law. *See* 64 Fed. Reg. 54474 (Oct. 6, 1999). In reaching the decision, the Administrator concluded that the fee met neither of the requirements of § 5125(g), finding that it was not fair and was not used for purposes consistent with the mandate of the federal Act.

As a result, the state filed a petition in federal district court seeking judicial review of the preemption determination. Relying on our holding in *Tennessee Department of Human Services v. United States Department of Education*, 979 F.2d 1162 (6th Cir. 1992), the district court held that Tennessee was not protected from purely administrative action by principles of sovereign immunity. The state now appeals that determination under the collateral order doctrine. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993).

## ANALYSIS

Dual sovereignty, of course, lies at the center of the American constitutional structure. In ratifying the federal Constitution, the states surrendered a portion of their inherent immunity and consented to suits brought both by sister states and by the federal government. *See Alden*, 527 U.S. at 755. However, the states, as political sovereigns, remained immune to private suit, provided that they had not given prior consent or otherwise waived immunity. *See, e.g., Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). Immunity to private suit is not limitless; through later ratification of the Fourteenth Amendment, the states waived immunity to suits brought pursuant to the congressional enforcement power granted by Section Five of that Amendment. *See Dellmuth v. Muth*, 491 U.S. 223, 227-28 (1989) (explaining that Congress has the authority to abrogate state sovereign immunity under Section Five of the Fourteenth Amendment when the intent to abrogate is clearly stated in the congressional act).

Passed in reaction to the Supreme Court decision in *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419 (1793), the Eleventh Amendment of the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Until recently, the Eleventh Amendment was considered the primary source of state sovereignty, popularizing the shorthand term "11th Amendment sovereign immunity" as a general reference to inherent state power. However, recent Supreme Court analysis has provided that "the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment." *Alden*, 527 U.S. at 712; *see also Fed. Mar. Comm'n*, 535 U.S. at ___, 122 S. Ct. at 1871 (stating "the Eleventh Amendment does not define the scope of the States' sovereign immunity; it is but one particular

exemplification of that immunity"). Based upon interpretations of this inherent power, the Supreme Court has held that states are immune to private suits for violation of federal laws enacted under Congress's Article I powers not only in Article III courts, but also in state courts. *See Seminole Tribe*, 517 U.S. at 47 (immunity in federal courts); *Alden*, 527 U.S. at 712 (immunity in state courts). In addition, states may not be subjected to binding administrative adjudications brought by private parties unless prior consent to such proceedings has been given. *See Fed. Mar. Comm'n*, 535 U.S. at ___, 122 S. Ct. at 1874.

The central question in this case thus becomes whether the process of preemption determination established by Congress and carried out by the USDOT falls within the ambit of adjudicatory determinations barred by state sovereign immunity, as delineated in *Federal Maritime Commission*. There, the Court held that sovereign immunity protected a state agency from suit by a private party seeking injunctive relief and monetary damages for violation of the Shipping Act of 1984, 46 U.S.C. App. § 1710 (a), which is enforced by the Federal Maritime Commission. 535 U.S. at ___, 122 S. Ct. at 1874. In the event of a complaint, the Shipping Act utilizes an administrative proceeding before an administrative law judge, governed by the Commission's Rules of Practice and Procedure, which the Court characterized as "quite similar to those found in the Federal Rules of Civil Procedure." *Id.* at ___, 122 S. Ct. at 1873. After cataloging the procedures provided by the Commission's rules, describing the role of the administrative law judge, and analyzing the nature of the available remedies, the Court concluded that "the similarities between F[ederal] M[aritime] C[ommission] proceedings and civil litigation are overwhelming." *Id.* at ___, 122 S. Ct. at 1874. The Court reiterated the lower court's characterization of the Commission's administrative proceeding as one that "walks, talks, and squawks very much like a lawsuit" and concluded that, like Article III actions, the proceedings were adjudicative in nature and were therefore barred by sovereign

immunity in actions against the state. *Id.* at ___, 122 S. Ct. at 1873-1877.

Hence, *Federal Maritime Commission* makes it clear that the district court's analysis in this case, which rejected Tennessee's claim of sovereign immunity merely on the basis that the USDOT proceeding was administrative in nature, is no longer complete. *See Tenn. v. U.S. Dep't of Transp.*, Order No. 3:99-1126 (M.D. Tenn. Feb. 27, 2001) (relying on *Tenn. Dep't of Human Servs. v. U.S. Dep't of Educ.*, 979 F.2d 1162 (6th Cir. 1992), in determining that "Eleventh Amendment immunity does not apply to Federal executive administrative action"). It falls to us to determine, based on the record developed below, whether the nature of the procedure used by the USDOT to respond to requests for preemption determinations under the Hazardous Materials Transportation Act is sufficiently "adjudicative" to fall under the rubric of the majority opinion in *Federal Maritime Commission*. In doing so, we must be mindful that it is also the duty and prerogative of administrative agencies in the executive branch of our constitutionally tripartite form of government to enforce federal law and to enact regulations necessary to that enforcement. *See, e.g., Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

We conclude that the facts in the record clearly distinguish this case from *Federal Maritime Commission* because the process used by the USDOT simply is not an "adjudication," as that term was used by the majority in the Supreme Court decision.

The structure of the preemption determination process detailed in 49 U.S.C. § 5125 is unique; the parties and the district court in this case were unable to identify any other congressional act employing a similar method. The process appears to be designed to meet two distinct goals: first, to allow the USDOT to interpret provisions of state law in conjunction with its understanding of the purpose of the federal legislation that it administers and, second, to ensure

that its determination is afforded the deference required by *Chevron* when reviewed by the courts. As a result, the Act mandates a procedure that approximates other administrative procedures already given judicial approval.

Although unique in its structure, the procedure fits within the informal rule-making process outlined in the Administrative Procedure Act. *See* 5 U.S.C. § 553. The APA provides for interested parties to "petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e); *see* 49 C.F.R. § 106.10 (stating that the regulations are added, amended, or deleted pursuant to the informal rule-making procedures of the APA). Accordingly, preemption determinations are prompted by the application of "[a] person. . . directly affected" by the requirements of the state law in question, in this matter the Association of Waste Hazardous Materials Association. 49 U.S.C. § 5125(d). The USDOT Associate Administrator then publishes notice of the application in the federal register, inviting "interested persons an opportunity to participate . . . through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553(c); *see* 49 C.F.R. § 106.55; 49 C.F.R. § 107.205. The state is also mandatorily provided notice by the party seeking a ruling before any determination is reached by the Administrator. *See* 49 C.F.R. § 107.205; *see also* 63 Fed. Reg. 17,479 (Apr. 9, 1998) (public notice and invitation to comment in this case). Further, although the state is in no way required to participate in the determination, state officials are encouraged to submit comments that better help the administrator evaluate the position of the relevant state agency. Even if the state chooses not to participate, it is not barred from challenging the final determination in a federal district court. *See* 49 U.S.C. § 5125(f). As earlier noted, similar versions of this process of rule-making have gained approval by the courts because of the provision for notice and comment by interested parties, as well as the application of agency expertise in reaching a final outcome. *See generally Chevron*, 467 U.S. at 837.

This process differs dramatically from the one scrutinized by the Supreme Court in *Federal Maritime Commission* and, quite plainly, does not mirror federal civil litigation. There are no formal rules of practice or procedure, no formal complaint is required, there is no provision for an answer by the state, and there is no formal discovery process. An investigation, if initiated by the Associate Administrator, is not governed by formal discovery rules. The Administrator is not required to conduct a hearing, and if a hearing is conducted, it is not bound by the rules of evidence or civil procedure, nor is it handled by an administrative law judge. *See* 49 C.F.R. §§ 107.205-209. The resulting ruling is prospective only.

We find two of the points set out above dispositive. The first concerns the character of the decision-maker. The second concerns the nature of the decision.

In invalidating the administrative action in *Federal Maritime Commission*, the Supreme Court focused heavily upon the role of the administrative law judge, finding that an administrative law judge acts as the functional equivalent of an Article III judge. *See* 535 U.S. at ___, 122 S. Ct. at 1872-73. The Court noted that administrative law judges have absolute immunity from liability for their judicial acts and are triers of fact "insulated from political influence." *Id.* at ___, 122 S. Ct. at 1872 (relying on *Butz v. Economou*, 438 U.S. 478 (1978)). In contrast, the decision-maker in this action, the Associate Administrator for Hazardous Materials Safety, acting under authority delegated by the Secretary of Transportation, is a member of the executive branch charged with the duty of furthering the purpose of the federal legislation at issue. This official is not bound by rules of evidence or procedure and need not remain "insulated from political influence." Clearly, the Associate Administrator acts not as an Article III judge, virtually or functionally, but merely, as the title implies, as an administrator of a federal agency interpreting and enforcing federal legislation in reaching the preemption determination.

The other dispositive factor is one that clearly distinguishes the process used by the USDOT in making the preemption determination from the procedure used in *Federal Maritime Commission*: the nature of the final determination. Rather than an adjudication of the rights and responsibilities of different parties leading to injunctive relief and an award of monetary damages, the preemption decision in 49 U.S.C. § 5125 does not direct the entry of relief against the State of Tennessee. Instead, it serves as an administrative interpretation of a federal statute, prospective only in its application and warranting *Chevron* deference in subsequent litigation. *See Chevron*, 467 U.S. at 834-44. The action of the Associate Administrator does not result in an order of enforcement against a state, nor does it leave a state defenseless in later litigation if the state chooses not to participate in the administrative proceeding. *See Fed. Mar. Comm'n*, 535 U.S. at ___, 122 S. Ct. at 1876 (explaining that procedures effectively coercing states into participating in Federal Maritime Commission proceedings influenced the Court's decision that sovereign immunity barred suit against the State of South Carolina). Further, in contrast to the powers of the Federal Maritime Commission under provisions of the Shipping Act, *see id.* at ___, 122 S. Ct. at 1877-78, the USDOT Administrator does not possess the power to assess a civil penalty for non-compliance because the agency is without authority to issue an order against the state. Instead, the Administrator is merely providing an agency interpretation of the federal law in question, and that interpretation is strictly prospective in nature.

One further point about the preemption procedures must be addressed. The procedures include an opportunity for a person aggrieved by a determination to file a petition for reconsideration with the Associate Administrator. *See* 49 C.F.R. § 107.211. The State of Tennessee argues that the petition for reconsideration functions as the equivalent of a legal appeal, differentiating this procedure from the standard rule-making process. We conclude, however, that the existence of an opportunity to petition for reconsideration

does not alter the nature of the decision reached by the USDOT. Indeed, administrative agencies often entertain petitions for reconsideration in connection with the rule-making proceedings. *See, e.g., Simms v. Nat'l Highway Traffic Safety Admin.*, 45 F.3d 999, 1003 (6th Cir. 1995); *Chrysler Corp. v. Dep't. of Transp.*, 472 F.2d 659, 680 (6th Cir. 1972).

## CONCLUSION

For the reasons set out above, we conclude that the administrative procedure addressed in this matter falls within the rule-making process lying at the center of the responsibilities of federal executive agencies. Rather than an adjudicative procedure, the process utilized to reach a preemption determination serves the valuable function of allowing an agency of the executive branch to interpret federal legislation that it is authorized to enforce. This procedure, employing a notice-and-comment process and the expertise of the USDOT, does not offend the dignity of the states, nor does it force a state to adjudicate claims brought by private citizens against the state as if it were sued in an Article III tribunal. We hold that it is, instead, an appropriate – and constitutionally valid – method designed to permit enforcement of federal legislation implementing the Commerce Clause of the United States Constitution. We therefore AFFIRM the judgment of the district court and REMAND the case for further proceedings.