**Julie T. MEYERS; Brad A. Meyers Plaintiffs–Appellants,**

v.

**FRANKLIN COUNTY COURT OF COMMON PLEAS; Douglas Shoemaker, Magistrate; Kay Lias, Judge; China Widener Defendants–Appellees.**

No. 02–3363.

United States Court of Appeals, Sixth Circuit.

Nov. 17, 2003.

Zach Zunshine, Columbus, OH, for Plaintiffs–Appellants.

Robert E. Williams, Prosecuting Attorney's Office for the County of Franklin, Columbus, OH, for Defendants–Appellees.

Before SUHRHEINRICH, COLE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.

At an annual review hearing before the Juvenile Court, Julie Meyers, who previously had been declared a dependent of the state of Ohio, was removed from the care of her parents and placed in a foster home pending a full hearing on the merits. The parents brought suit against (1) China Widener, the attorney for the child services agency, for her role in the matter, but this suit was dismissed by the district court because of absolute immunity; and (2) the Franklin County Court of Common Pleas, the magistrate, and the judge, but this suit was dismissed due to *Younger* abstention. The Meyers appeal the district court's decision to grant summary judgment to Widener and to deny the Meyers the opportunity to file a second amended complaint. Because the district court was correct in its application of absolute immunity as to Widener and because a motion to amend the Meyers's complaint would be futile, we affirm the judgment of the district court.

### Facts

The Franklin County Children Services (the "FCCS," or the "Agency") first became involved with Julie and her parents in 1989, when Julie was three. At that time Mrs. Meyers apparently had long-standing problems with emotional illness, and these problems apparently implicated Julie's health and safety. The following year, on May 17, 1990, Mrs. Meyers–by then divorced–contacted the FCCS, asking it to assume custody of Julie. The Agency agreed, and the same day it filed a complaint in the Franklin County Court of Common Pleas, Juvenile Branch ("Juvenile Court"), seeking temporary custody of Julie "for purposes of placement and protec-

tion." J.A. at 144. The FCCS's complaint designated Julie a "dependent child"–an important term because Ohio Revised Code ("O.R.C.") § 2151.353 provides that

> [i]f a child is adjudicated an abused, neglected, or dependent child, the court may ... [c]ommit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home or in any other home approved by the court.

A "dependent child" is a child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." O.R.C. § 2151.04(C).

In accordance with the request of Mrs. Meyers's attorney, the Juvenile Court adjudicated Julie a dependent child and committed her to the temporary custody of her maternal grandmother, Shirley Twigg, until Mrs. Meyers could straighten things out. A child adjudicated to be a dependent child remains under the court's jurisdiction until he or she is 18. O.R.C. § 2151.353(E). Every year thereafter the Court held a hearing on Julie's status. See O.R.C. §§ 2151.353(F) and (G) (providing that a hearing should be held every year). Julie stayed with her grandmother for the next eight years, until September 14, 1998, at which time the Juvenile Court returned her to the custody of her mother–though the Court maintained wardship over Julie and ordered the FCCS to keep her under protective supervision. It seems that during her stay with her grandmother, Julie began to develop problems with gaining too much weight. As

part of the plan developed to return Julie to her mother, her mother was to have a dietician and a public health nurse help Julie with her weight. A similar plan had worked well while Julie was staying with her grandmother, so that at the time Julie went to her mother she weighed thirty pounds under her danger-zone weight.

Julie stayed with her mother through the following year, until October 29, 1999, when the Court held its annual hearing. At this hearing, held before Magistrate Douglas Shoemaker, an attorney named China Widener appeared on behalf of the FCCS.[1] Widener argued that Julie should immediately be returned to the temporary custody of the FCCS, because Julie had approximately doubled her weight since her return to her mother. Widener also noted that Julie was suffering from high blood pressure, that Julie's doctor had recommended that Julie be removed from the home, and there was "information" that Julie and Mrs. Meyers were using cocaine. Additionally, Julie's lay guardian *ad litem* attested that Julie was suffering from head lice, and there were "some other issues within the home."[2] J.A. at 159. Mr. Meyers's attorney disagreed, arguing that Julie's blood pressure was fine, and contending that the remediation could just as effectively take place at Julie's mother's house, because a "[t]emporary order of custody to Children Services by itself is not going to reduce the weight of this child." J.A. at 164. He also complained that Widener's requests were improper because she had filed no written motion, and she presented neither witnesses nor affidavits in support of her case. Magistrate Shoemaker decided that it would be best to entrust Julie to the FCCS's custody

---

1. *See* O.R.C. § 2151.16 (allowing juvenile courts to appoint magistrates to hear arguments and make non-binding recommendations to the juvenile judge).

2. *See* Ohio Rules of Juvenile Procedure 4(B) (allowing juvenile courts to appoint a guardian when "[t]he interests of the child and the interests of the parent may conflict").

immediately, on condition that Mr. and Mrs. Meyers be allowed to visit Julie once a week, and that a full hearing be held on November 16. Later that day (October 29), the FCCS removed Julie from school and put her in foster care in another county.

The Meyers immediately filed objections with the juvenile judge, Judge Katherine Lias, whose responsibility it was either to affirm or set aside Magistrate Shoemaker's recommendation. Judge Lias held a hearing on November 9 and considered the Meyers's objections, but she nevertheless affirmed the recommendation.

The following day, the Meyers filed a complaint in federal district court, seeking declaratory judgment and injunctive relief, as well as monetary damages, under 42 U.S.C. § 1983 against Magistrate Shoemaker, Judge Lias, and the Juvenile Branch of the Franklin County Common Pleas Court (collectively, the "Juvenile Court defendants"). A First Amended Complaint, filed November 15, added Widener to the list of defendants. The Amended Complaint argued that the defendants had violated the Meyers's due process rights by taking Julie away without any sworn testimony or evidence that Julie was in immediate danger, and sought (1) an injunction requiring the judges to rescind their temporary custody order, (2) an injunction requiring the FCCS to return Julie to her parents, (3) an injunction requiring the Juvenile Court to require some evidence before a child is removed from his or her home, and (4) money damages, presumably against Widener (who was being sued in her individual capacity).[3] Along with the complaint, the Meyers also

filed on November 10 a motion for a temporary restraining order and a preliminary injunction ordering the juvenile judges to set aside their order.

The district court held a hearing on November 15, 1999, and in an opinion issued the same day, it dismissed the Meyers's action without prejudice on the basis of *Younger* abstention. The Meyers appealed to this court, and additionally, in December of 1999, they filed with this court a motion for an injunction or alternately for an order requiring the state court to hold an immediate hearing on the merits. This court denied the motion to compel a hearing, finding that the Meyers had failed to show that they were likely to prevail on their *Younger* appeal. Indeed, the court did affirm the district court's *Younger* decision in an unpublished opinion issued August 7, 2001, and dismissed the injunctive and declaratory relief claims against the Juvenile Court defendants based on *Younger* abstention. *Meyers v. Franklin County Court of Common Pleas*, 23 Fed.Appx. 201 (6th Cir. Aug.7, 2001) ("*Meyers I*"). Instead of dismissing the money damages claim against Widener, the court in *Meyers I* remanded the money damages claim against Widener so that the district court could issue a stay. *Id.*

Magistrate Shoemaker's full hearing of Julie's case, which had been scheduled for November 16, 1999, was postponed, and the Juvenile Court instead held the hearing on January 6, 2000. At that hearing, the Meyers did not contest the FCCS's motion to continue its temporary custody, and Magistrate Shoemaker issued an order recommending that the FCCS's legal custody be continued until further notice.

---

**3.** There is some question as to whether the Meyers actually litigate monetary damages against the Juvenile Court defendants. The First Amended Complaint and the proposed Second Amended Complaint keeps open the

possibility that the Meyers seek monetary damages from all defendants. However, in the Meyers's brief, they do not argue that they are entitled to monetary damages from the Juvenile Court defendants.

Judge Lias affirmed the recommendation on January 12, 2000. Julie has been in the FCCS's legal custody ever since, and in the physical custody of a foster family.

On September 21, 2001, a little over a month after this court handed down its decision and before the district court entered a stay for the claim against Widener, the Meyers filed a Motion to Lift Stay and File a Second Amended Complaint in the district court. The Second Amended Complaint is virtually identical to the First Amended Complaint. It differs only in that it omits from the prayers for relief a request that the district court enter an injunction requiring the Juvenile Court defendants to return Julie to the custody of her parents.

The Juvenile Court defendants opposed the motion for leave to file the Second Amended Complaint, which if granted would reassert the claims against them that *Meyers I* had dismissed. In an order issued on October 31, 2001, the district court denied the motion to amend the complaint, finding that *Younger* abstention was still proper. The Meyers now appeal this decision.

Widener did not oppose the motion to lift the stay regarding the damages action against her, and the district court in its October 31 order consequently allowed the Meyers's case against Widener to proceed. Discovery ensued, and Widener thereafter filed a motion for summary judgment, based on her absolute immunity as an advocate in a judicial proceeding. On March 18, 2002, the district court issued a Memorandum Opinion and Order that granted Widener's motion. The Meyers also appeal this order.

### Analysis

### I. *Widener's Motion for Summary Judgment*

█ First, the district court properly granted summary judgment to Widener on the theory of absolute immunity. We review a district court's grant of summary judgment based on absolute immunity *de novo*. *See Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir.2000).

This court has previously held that in some circumstances social workers are entitled to absolute immunity. *Id.* at 774; *see also Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir.1984); *Salyer v. Patrick*, 874 F.2d 374, 377–78 (6th Cir.1989). Social workers are analogized to prosecutors for purposes of determining absolute immunity. *Holloway*, 220 F.3d at 774. This court has held that

> The analytical key to prosecutorial immunity, therefore, is *advocacy* –whether the actions in question are those of an advocate. By analogy, social workers are absolutely immune only when they are acting in their capacity as *legal advocates –initiating court actions or testifying under oath* –not when they are performing administrative, investigative, or other functions. The case before us turns on whether the actions of which [the plaintiff] complains were taken by [the social worker] *in her capacity as a legal advocate.*

*Id.* at 775 (citations omitted) (underlining added).

The Meyers allege that Widener's statements were not those of an advocate, but instead her statements were actual testimony that crossed beyond Widener's quasi-judicial role as a prosecutor/social worker figure to that of a complaining witness, thus abrogating her absolute immunity. *See Kalina v. Fletcher*, 522 U.S. 118, 129–30, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (holding that a prosecutor was acting as a complaining witness when she certified the facts in a warrant as true, thus straying from conduct " 'intimately associated with

the judicial phase of the criminal process'" and into conduct that did not require professional decision making and could have been performed by any competent witness).

It is undisputed that Widener appeared in court as an attorney to submit a motion that the FCCS be granted temporary custody of Julie. This court has repeatedly held that social workers are absolutely immune for actions which are "intimately associated" with the judicial phase of proceedings relating to the welfare of a child. *Rippy v. Hattaway,* 270 F.3d 416, 422 (6th Cir.2001); *Salyer v. Patrick,* 874 F.2d 374, 377–78 (6th Cir.1989); *Kurzawa v. Mueller,* 732 F.2d 1456, 1458 (6th Cir.1984). Similar to the role of the social workers in the abovementioned cases, Widener's role in the hearing was to file a motion for temporary custody in a judicial proceeding to protect Julie's welfare; and her role required professional decision-making. Widener, as an attorney acting on behalf of the Agency, clearly fulfills the judicial function requirement. The district court properly found that Widener was entitled to absolute immunity for her role in this case.

## II. Claims Against the Juvenile Court Defendants

We need not reach the claims against the Juvenile Court defendants because those claims are moot to the extent that injunctive and declaratory relief is sought, and the Juvenile Court defendants are immune from any suit for money damages.

Plaintiff's claims for injunctive and declaratory relief have become moot. There is no impending proceeding in which Julie may be removed without the allegedly required procedural protection. It is true that in *Meyers I,* we found that the parents' claims for injunctive and declaratory relief were within the "capable of repetition yet evading review" exception to the doctrine of mootness. *Meyers I,* 23 Fed. Appx. at 206. We noted that

> The capable-of-repetition doctrine applies only in exceptional situations, where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.

*Id.* (quoting *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (internal citations and quotation marks omitted). In analyzing element two, we noted that the history of this case indicated that Julie might well be returned to her parents and at some point in the future be removed again. Thus, "there is a reasonable possibility that Julie and her parents will once again encounter the procedures that they challenge." *Id.* at 207.

The actual controversy between parties "must exist at [all] stages of appellate ... review, and not simply at the date the action is initiated." *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). If no such controversy exists, the action is moot. The Supreme Court has stated that "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). In *Sosna v. Iowa,* 419 U.S. 393, 399–401, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Supreme Court held that a challenge to a one-year statutory residency period, which was required before one could obtain a divorce in Iowa, was not moot because a class of persons subject to the requirement had been certi-

fied. Without a class certification, however, "[i]f appellant had sued only on her own behalf, both the fact that she now satisfies the one-year residency requirement and the fact that she has obtained a divorce elsewhere would make this case moot and require dismissal." *Sosna,* 419 U.S. at 399, 95 S.Ct. 553. In making this conclusion the Court declined "to speculate that [the plaintiff] may move from Iowa, only to return and later seek a divorce within one year from her return." *Id.* at 400, 95 S.Ct. 553.

Similar speculation would be required in order to find the procedure at issue in this case "capable of repetition" as to the plaintiffs. Over two years have elapsed since we decided *Meyers I.* Julie is now within three months of turning 18 years old. At that point, she will no longer be a dependent child and be supervised by the FCCS. It would now be too speculative to anticipate that in the intervening three months the FCCS will release Julie into her parents' custody and then remove her from the custody via an annual review hearing. All claims relating to injunctive and declaratory relief in the present case have thus become moot. Unlike in *Sosna,* there is not a similar class that the Meyers seek to represent. Thus, the injunctive and declaratory relief claims must now be considered moot.

■ While a claim for monetary relief would not become moot, any remaining monetary relief claim against the Juvenile Court defendants cannot succeed under § 1983 and the Eleventh Amendment. The Meyers sue Judge Lias and Magistrate Shoemaker in their official capacities, as well as the Juvenile Court itself. Under § 1983 and the Eleventh Amendment, the Juvenile Court is considered an arm of the state and cannot be subject to a § 1983 or any other suit for monetary relief. *See Mumford v. Basinski,* 105 F.3d 264, 269

(6th Cir.1997) (holding that the Ohio Domestic Relations Court, another court of common pleas, was an arm of the state).

The plaintiffs sued Judge Lias and Magistrate Judge Shoemaker in their official capacities instead of their individual capacities. Proposed Second Amended Complaint, J.A. at 99. Such claims cannot be brought against such officials in their official capacities under the Eleventh Amendment. *Doe v. Wigginton,* 21 F.3d 733, 736–37 (6th Cir.1994) ("[S]ince a official-capacity claim for retroactive relief [i.e., money damages] is deemed to be against the State whose officers are the nominal defendants, the claim is barred by the Eleventh Amendment."). Thus, all claims, including any state law claims, for monetary relief cannot succeed.

Moreover, § 1983 does not provide a remedy against Judge Lias and Magistrate Judge Shoemaker in their official capacities. Such a suit is treated as if the actions were against the state itself. *See id.* at 269–70; *see also Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself"). States are not considered persons under § 1983. *Will,* 491 U.S. at 71, 109 S.Ct. 2304; *see also Mumford v. Zieba,* 4 F.3d 429, 435 (6th Cir.1993) ("This court has held that a state court is not a 'person' within the meaning of that term as used in § 1983."). Therefore, to the extent that the Meyers attempt to claim monetary damages against the Juvenile Court defendants in their official capacities, their claim cannot succeed. The district court's judgment to refuse to amend the Meyers's complaint is therefore affirmed.

The judgment of district court is AF-FIRMED.