OPINION
{¶ 1} Plaintiffs-appellants Mary Jane Molnar, Irma Lewis, and Rosemarie VonHof appeal the Lake County Common Pleas Court's grant of summary judgment for defendants-appellees Judge Ted Klammer and Randy Klammer. A number of issues are raised in this appeal. The first issue is whether appellants provided sufficient evidence to show that a genuine issue of material fact existed on their age discrimination claim. The second issue raised is whether appellants' due process and equal protection rights were violated. The third issue is whether R.C. 4141.28 is unconstitutional. The fourth issues is whether the trial court erred in holding that appellants' Federal Age Discrimination in Employment Act (ADEA) claim was barred by the Eleventh Amendment to the United States Constitution. The last issue is whether the trial court erred in granting summary judgment in favor of Randy Klammer on the claim that he defamed appellants. Specifically, whether the statements made were opinions and nonactionable. For the reasons provided below, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} In November of 2002, Judge Klammer successfully ran for the position of Probate Judge in Lake County. He took office officially on February 9, 2003. On February 7, 2003, he informed Molnar, Lewis, and VonHof, deputy clerks at the probate court serving under the previous judge, Judge Skok, that their services would not be needed in his administration. He met with each of them individually and gave them a letter stating that their services were not needed because of "reorganization of the court." Betsy Swindell, the court administrator, was present at these meetings. She then submitted the above reason to the Ohio Bureau of Employment Services (OBES) as the reason why appellants were no longer retained as clerks for the probate court.
 {¶ 3} All three appellants were over the age of 60 when they were informed that their services were no longer needed. Molnar was 60, Lewis was 63, and VonHof was 69. Each had been hired and worked for the previous judge, Judge Skok, who was retiring from the bench. Molnar had worked at the probate court for over eight years before Judge Klammer took office; Lewis had worked at the probate court for over nine years before Judge Klammer took office; and VonHof had worked at the probate court for almost 25 years before Judge Klammer took office.
 {¶ 4} Due to the fact that Judge Klammer was a democrat and all three appellants were democrats, appellants wondered why their services were not needed, i.e. why an elected democrat judge would not be loyal to democrat employees. Thus, Molnar, a very active member of the Lake County Democratic Women's Club, called Tom Tagliamonte, who was the chairman of the Democratic Party, to inform him that she and the other women had been "let go" by Judge Klammer. (Molnar Depo. 68). He told Molnar to ask a few of the women from the Democratic Women's Club "to ask some questions" at the central committee meeting that was scheduled for February 15, 2003. (Molnar Depo. 68).
 {¶ 5} In accordance with that advice, Molnar contacted Louise Hayden and asked her to ask questions at the committee meeting. (Molnar Depo. 68). After the meeting, Hayden called Molnar to report what was said. Hayden told Molnar that when posed with the question Randy Klammer, Judge Klammer's son, stood up and said that his father, "had the right to terminate us [appellants] because we were not loyal Democrats, that we were troublemakers, that Judge Skok had told his father to terminate us because we were troublemakers in the court." (Molnar Depo. 73).
 {¶ 6} On March 7, 2003, appellants filed a complaint in Lake County Common Pleas Court alleging age discrimination in violation of R.C. 4112.14 and a common law wrongful discharge claim based upon age discrimination against Judge Klammer. In the same complaint, appellants asserted a defamation cause of action against Randy Klammer. The complaint was later amended to include a cause of action under the Federal Age Discrimination in Employment Act (ADEA) against Judge Klammer.
 {¶ 7} After discovery, both appellees filed motions for summary judgment. Appellants opposed the motions and moved to strike portions of Judge Klammer's deposition and affidavit on the grounds that they contained hearsay.
 {¶ 8} On April 5, 2004, the trial court granted appellees' motions for summary judgment and denied appellants' motion to strike. Appellants appeal from those orders.
 STANDARD OF REVIEW {¶ 9} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. Cole v. AmericanIndustries Resources Corp. (1998), 128 Ohio App.3d 546, 552. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsonsv. Fleming, 68 Ohio St.3d 509, 511, 1994-Ohio-172.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 10} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING DEFENDANT TED KLAMMER'S MOTION FOR SUMMARY JUDGMENT. (JUDGMENT ENTRY APRIL 5)."
 {¶ 11} This assignment of error deals solely with the grant of summary judgment for Judge Klammer. Appellants raise three separate issues. First, they argue that there is a genuine issue of material fact as to whether they were terminated on the basis of their age. Thus, according to appellants, the trial court was precluded from granting Judge Klammer's motion for summary judgment. Second, appellants contend that the trial court violated their due process and equal protection rights. Lastly, appellants contend that R.C. 4141.28, which precludes the use of documents submitted to the OBES as evidence, is unconstitutional. Each of these arguments will be addressed separately.
 A. Genuine Issue of Material Fact {¶ 12} R.C. 4112.02(A) and R.C. 4112.14(A) provide that it is unlawful for an employer to discharge without just cause or otherwise discriminate against an employee or potential employee on the basis of the employee's age. Smith v. E.G. Baldwin Assoc., Inc. (1997), 119 Ohio App.3d 410, 414. A party can support a claim of age discrimination by presenting either direct or indirect evidence. Id. at 414, citing Kohmescher v. KrogerCo. (1991), 61 Ohio St.3d 501, 505.
 {¶ 13} In a direct evidence case, "[a] plaintiff may establish a prima facie case by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent." Byrnes v. LCI CommunicationHoldings Co., 77 Ohio St.3d 125, 128-129, 1996-Ohio-307, citingMauzy v. Kelly Services, Inc., 75 Ohio St.3d 578,1996-Ohio-265, paragraph one of the syllabus.
 {¶ 14} In an indirect evidence case, there is a four-part test used to establish a prima facie case of age discrimination.Kohmescher, 61 Ohio St.3d 501, syllabus (explaining and modifying in paragraph one of the syllabus in Barker v. Scovill,Inc. (1983), 6 Ohio St.3d 146). See, also, McDonnell DouglasCorp. v. Green (1973), 411 U.S. 792. The four-part test requires a plaintiff to show that she "(1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age." Coryell v.Bank One Trust Co. N.A., 101 Ohio St.3d 175, 2004-Ohio-723, ¶20. See, also, Kohmescher, 61 Ohio St.3d 501, syllabus. Defendant-employer may then overcome the presumption inherent in the prima facie case by propounding a legitimate, nondiscriminatory reason for the plaintiff's discharge. Barker,6 Ohio St.3d 146. Finally, the plaintiff must be allowed to show that the rationale set forth by the employer was only a pretext for unlawful discrimination. Id.
 {¶ 15} In granting summary judgment for Judge Klammer, the trial court held that appellants produced no direct evidence that Judge Klammer discriminated against them on the basis of age. Furthermore, the trial court held that Molnar and Lewis failed to produce any evidence of the fourth prong of indirect evidence, that Molnar and Lewis were replaced by a person of substantially younger age. However, the trial court found that VonHof succeeded on this claim, but failed to show Judge Klammer's reason for firing her was a pretext for unlawful discrimination. Appellants find fault with these rulings.
 1. Direct Evidence {¶ 16} Appellants argue that they did produce direct evidence that Judge Klammer discriminated against them when he terminated them. They contend that the direct evidence of discrimination came from a statement made by Betsy Swindell a couple weeks prior to their termination. Swindell stated that the older employees were going to have difficulty with new changes that Judge Klammer would implement. (Molnar Depo. 153; VonHof Aff. ¶ 21). Appellants contend that this statement, taken along with the statistical evidence that they were replaced by persons under 40 years of age and persons under the age of 40 were retained, is sufficient to survive summary judgment on a direct evidence case.
 {¶ 17} Their contention is incorrect. First, the statement allegedly made by Swindell is not direct evidence of Judge Klammer's intent to discriminate.[1]
 {¶ 18} Swindell stated in her deposition that it was not her decision to terminate appellants. (Swindell Depo. 11). She also stated that she has no authority to terminate an employee; however, she did state that she had the authority to recommend termination and hiring. (Swindell Depo. 39). Furthermore, she stated that if it was up to her, VonHof would not have been terminated.
 {¶ 19} Appellants could not dispute Swindell's statement that she had no authority to terminate them. In fact, they admitted in their depositions that they had no knowledge of Swindell's involvement in their termination except for the fact that she was in the room when they received their letters stating they were not rehired.
 {¶ 20} This evidence shows that Swindell was a person without any decision-making authority to terminate employees. It has been stated that "derogatory co-worker comments do not substantiate a finding of employment discrimination, when such comments cannot be linked to the decisionmaker bringing forth the adverse action." Swiggum v. Ameritech Corp. (Sept. 30, 1999), 10th Dist. Nos. 98AP-1031 and 98AP-1040, quoting Gordon v. UniversalElectronics, Inc. (Oct. 1, 1997), 9th Dist. No. 18071, quotingEvans v. Jay Instrument and Specialty Co. (S.D.Ohio 1995),889 F.Supp. 302, 310. "There is a vital difference between comments which demonstrate a discriminatory animus in the decisional process and stray remarks made by nondecisionmakers." Swiggum,
10th Dist. Nos. 98AP-1031 and 98AP-1040, quoting Gordon, 9th Dist. No. 18071. Consequently, since Swindell was a nondecisionmaker, her alleged comments do not show direct evidence of Judge Klammer's alleged discriminatory intent.
 {¶ 21} Furthermore, despite appellants' insistence, the statistical data does not evidence that their termination was the result of age discrimination. Appellants' brief contends that they were replaced by Brian Foley, age 33. However, the evidence in the depositions reveals that this contention is inaccurate. All appellants admitted in their depositions that they did not know who replaced them. (Lewis Depo. 11; VonHof Depo. 17; Molnar Depo. 63). Moreover, the evidence showed that the three deputy clerks who were hired to replace appellants were over 40. Marjorie Brown, age 62, was appointed to replace Molnar, age 60. (Judge Klammer Aff. ¶ 9). Lynn Curtis, age 55, was appointed to replace Lewis, age 63. (Judge Klammer Aff. ¶ 9). Lori Kissig, age 49, was appointed to replace VonHof, age 69.
 {¶ 22} Also, Judge Klammer explained that while Brian Foley was hired after appellants received their letters explaining that they were not rehired, he was not hired as a deputy clerk. (Judge Klammer Depo. 22). Instead, he was hired as an assistant bailiff who handled afternoons and to do home investigations concerning guardianships. (Judge Klammer Depo. 22). Thus, the statistical evidence does not show direct evidence of age discrimination. Therefore, for the above stated reasons, the trial court's grant of summary judgment on the direct evidence claim was not erroneous.
 2. Indirect Evidence {¶ 23} Thus, our analysis turns to the indirect evidence claim. As explained earlier, age discrimination can also be shown through indirect evidence using a four-part test. Coryell,101 Ohio St.3d 175, 2004-Ohio-723, ¶ 20. See, also, Kohmescher,61 Ohio St.3d 501, syllabus. The first prong of the test is that appellants must be a member of a statutorily protected class.Coryell, 101 Ohio St.3d 175, 2004-Ohio-723, ¶ 20. As is shown by their ages, 60, 63, and 69, they are members of a statutorily protected class. Thus, the first prong is met.
 {¶ 24} The second prong is that appellants were discharged. Id. This factor not only includes discharge, but also includes an "adverse employment action."
 {¶ 25} Appellants claim that they were terminated. Judge Klammer, on the other hand, claims that they were not terminated, but rather that he chose not to rehire them when he took office.
 {¶ 26} He cites to R.C. 325.17 for the proposition that a probate court judge may appoint, employ, and discharge the necessary deputies. He contends that the language of this statute means that clerks serve at the pleasure of the probate court judge who appoints them and when that probate court judge retires or is not re-elected that their employment is terminated by that occurrence and not by the new judge. In effect, he claims that their employment expires when the judge that appoints them no longer retains the office.
 {¶ 27} We do not find his argument persuasive. R.C. 325.17
does state that the probate court judge has the authority to appoint, employ and discharge the necessary deputies. However, it does not indicate that the deputy's tenure is only so long as that judge holds office. Thus, that statute does not provide guidance as to whether appellants were terminated or whether their term of employment had expired and they were not rehired. Regardless, there is evidence in the record, that as far as the Lake County Auditor was concerned, appellants were terminated. On the Payroll Registration and Change Form, Betsy Swindell indicated that all three appellants were terminated. Thus, the record indicates that appellants were terminated.
 {¶ 28} Nonetheless, even if we agreed with Judge Klammer that appellants term of employment had expired and he simply chose not to rehire them, this decision still amounted to an "adverse employment action." Under R.C. 4112.02(A) it is unlawful to refuse to hire a person on the basis of their age. Thus, considering that Judge Klammer chose to, in his terms, "rehire" all other probate employees, his choice to not "rehire" appellants amounted to an "adverse employment action." Consequently, for all the above reasons, the second prong was met.
 {¶ 29} The third prong is that appellants were qualified for the position. Id. The evidence clearly establishes that they were. Molnar had worked as a deputy clerk in the probate court for approximately 7 years prior to Judge Klammer taking office and had not received any bad evaluations. Lewis had worked as a deputy clerk in the probate court for almost ten years prior to Judge Klammer taking office and she had not received any bad evaluations. VonHof had worked as a deputy clerk in the probate court for almost 25 years prior to Judge Klammer taking office and she had not received any bad evaluations. Thus, the third prong was met.
 {¶ 30} The fourth prong is that appellants were replaced by, or the discharge permitted the retention of, a person of substantially younger age. Id. This factor can be divided into two parts. The first part is whether appellants were replaced by anyone. The second part is, assuming that they were replaced, were the replacements "substantially younger" than appellants.
 {¶ 31} As to the first part, Judge Klammer asserts that appellants were not replaced by anyone because he did not terminate appellants. This argument is similar to the argument made above regarding whether appellants were discharged or whether their term of employment had expired and they were not subsequently rehired.
 {¶ 32} Having already found that an adverse employment action was taken against appellants, we find no merit with this argument. In Judge Klammer's affidavit it states that Brown was appointed to perform the job functions Molnar performed, Curtis was appointed to perform the job functions Lewis performed, and Kissig was appointed to perform the job functions VonHof performed. Thus, appellants were replaced.
 {¶ 33} Accordingly, the analysis turns to the "substantially younger" part of this factor. The Ohio Supreme Court has explained that the "substantially younger" factor defies an absolute definition and is best determined on a case-by-case basis. Id. at ¶ 21-22. However, it did offer the following caveat. Id. "When considering whether a favored employee is substantially younger than a protected employee, courts must keep in mind that the purpose of R.C. 4112.14(A) is to prevent employment discrimination on the basis of age, and that whether an employee is substantially younger is but a single factor in a broader analysis." Id. Thus, the substantially younger factor vest significant discretion to the trial court and, as such, will not be overturned unless the trial court abused its discretion. Id. at ¶ 24.
 {¶ 34} The trial court determined that neither Lewis nor Molnar were replaced by a person who was "substantially younger." 04/05/04 J.E. As was explained above, Molnar was replaced by Marjorie Brown. Brown was 62 years of age, while Molnar was 60 years of age. Thus, since Brown is older than Molnar, it cannot be concluded that Molnar was replaced by someone substantially younger. Accordingly, the trial court did not abuse its discretion by finding that Molnar did not satisfy the fourth prong of indirect age discrimination. Summary judgment was appropriately granted to Judge Klammer on Molnar's age discrimination cause of action.
 {¶ 35} Lewis was replaced by Lynn Curtis. Curtis was 55 years of age, while Lewis was 63. The trial court found that Curtis was not substantially younger than Lewis.
 {¶ 36} Lewis is Curtis' senior by only eight years. When viewed under a broader analysis, as the Supreme Court dictates, this eight year difference is not substantial. As the trial court correctly pointed out in its judgment entry, the statistics of this case show that the probate staff is "markedly `mature.'" 04/05/04 J.E. For example, as of the date of the trial court's ruling, there were 16 probate employees. Twelve of those employees were over 40. Out of those 12 employees, eight of them are over 50. Or in other words 75% of the probate court employees were in the legislatively protected class. Thus, this evidence shows that there is not a preference for youth.
 {¶ 37} Accordingly, the trial court did not commit error in holding that Lewis was not replaced by someone who was "substantially younger." The fourth element was not met and, as such, summary judgment was appropriately granted to Judge Klammer on Lewis' claim of age discrimination.
 {¶ 38} As to VonHof, as was explained above, she was replaced by Lori Kissig. Kissig was 49 years of age, while VonHof was 69 years of age. The trial court concluded that the 20 year age difference was sufficient to show that VonHof was replaced by someone "substantially younger."
 {¶ 39} The 20 year age difference when taken in conjunction with the above analysis that shows that the probate staff is "markedly `mature'" renders the decision as to whether or not Kissig was "substantially younger" than VonHof a close call. That said, when considering the broad discretion vested with the trial court to make this determination, we cannot find that it abused its discretion in concluding that VonHof met the four prong test for showing a prima facie case of age discrimination. Therefore, as to VonHof, the burden then shifted to Judge Klammer to produce a legitimate, nondiscriminatory reason for the employment action, i.e. not rehiring her.
 {¶ 40} Judge Klammer, in routine paperwork to the Ohio Bureau of Employment Services (OBES), listed the reason for not retaining appellants as deputy clerks as "reorganization" and "lack of work." Also, in a letter dated March 11, 2003 to the Lake County Prosecutor, Judge Klammer stated that the reason for not retaining appellants was due to "reorganization." During depositions, both Swindell and Judge Klammer testified that all three appellants were not retained due to loyalty, attitude and the manner in which they dealt with the public and attorneys. (Swindell Depo. 5; Judge Klammer Depo. 5, 6, 8). These are legitimate, nondiscriminatory reasons. Thus, the burden shifted back to VonHof to show that his reason was a pretext for discrimination.
 {¶ 41} VonHof (as do Molnar and Lewis) contends that the paperwork reason and the depositional reason are different. As such, she claims that this shows that there is a genuine issue of material fact as to whether the reasons are a pretext for age discrimination.
 {¶ 42} First, it must be noted that the reason provided to OBES (reorganization and lack of work) cannot be used as evidence. R.C. 4141.28. VonHof admits this, but later claims that this statute is unconstitutional. For reasons explained later, the reasons submitted in OBES paperwork cannot be used as evidence. See subheading Constitutionality of R.C. 4141.28.
 {¶ 43} That said, the "reorganization" reason can be considered because it was used as a reason in the March 11, 2003 letter to the County Prosecutor. Thus, the issue is whether the reasons of "reorganization," "loyalty," and "attitude" are the same reasons or if Judge Klammer's depositional reason of due to loyalty and attitude was a change from the previous reason of reorganization.
 {¶ 44} As to the reasons of attitude and reorganization, given the following explanation given by Judge Klammer in his deposition, it appears they are the same reason. He stated:
 {¶ 45} "A. Rosemary — I thought about whether I could change the way she deals with the public and the way she deals with attorneys. And after I thought about it, I felt that I could not do that, I could not be successful at that.
 {¶ 46} "Personally, I like her. Part of my administration, unfortunately, I didn't want her there because of her attitude that she knows what law should be applicable and tells attorneys and tells the public.
 {¶ 47} "I don't want somebody like that there. They're not there to give legal advice. They're there to process the documents. Somebody else will make a decision on the documents that are filed." (Judge Klammer Depo. 48-49).
 {¶ 48} The above shows that the decision to not retain VonHof dealt with the reorganization of the court. Or in other words, he thought her attitude and previous dealings with the public would not successfully work in his reorganization of the court. (Judge Klammer Depo. 8, 48-49; Swindell Depo. 5).
 {¶ 49} Likewise, the reasons of loyalty and reorganization are also connected, and do not display a change of reasoning. It has been stated that a deputy clerk's position requires "trust, confidence, integrity and fidelity to the Judge." Snyder v. Cityof Fairborn, 2d Dist. No. 2001 CA 107, 2002-Ohio-3569. VonHof admitted that the position requires loyalty to the judge. (VonHof Depo. 13). In order to accomplish the goal of reorganization, the judge would need to have employees who are loyal to him.
 {¶ 50} Furthermore, as was stated in Judge Klammer's affidavit:
 {¶ 51} "As part of this reorganization and based on my personal impressions of and experiences with the Plaintiffs, I questioned their loyalty to me and their attitude towards the public. I also discussed all of the court personnel, including the Plaintiffs, with Betsy Swindell, the Court Administrator, and I reviewed personnel files. I ultimately made the decision not to appoint the Plaintiffs as deputy clerks in the Probate Court during my administration." (Judge Klammer Aff. ¶ 6).
 {¶ 52} Thus, loyalty and attitude are not different reasons from reorganization. Accordingly, his reasons did not change, and therefore, it shows no pretext for age discrimination.
 {¶ 53} Likewise, other evidence presented by VonHof that she worked numerous years at the court without having been disciplined, that Judge Klammer had never worked with her or spent much time at the court, and that less experienced employees were not terminated, does not show that Judge Klammer's reasons of organization, loyalty, and attitude were pretexts for age discrimination. As the trial court points out:
 {¶ 54} "[N]one of these statements bears on whether they were not retained because of their age. In other words, they do not address Judge Klammer's articulated reasons that he was concerned about their loyalty to him and their attitude in serving the public under his reorganized court.
 {¶ 55} "How Judge Klammer gained his impression or the information used in reaching his ultimate decision is not material — it was plaintiffs' burden to show that whatever his reasons, they were a pretext for concealed age bias." 04/05/04 J.E.
 {¶ 56} Consequently, the trial court did not err in concluding that VonHof "failed to show that Judge Klammer's selection process was a mere pretext for age-related bias." As such, the argument to the contrary lacks merit.
 B. Due Process and Equal Protection {¶ 57} Next, appellants contend that their due process and equal protection rights were violated.
 1. Due Process {¶ 58} As to due process, appellants argue that their due process rights to a fair trial were denied when the trial court granted Judge Klammer's motion for summary judgment. As Judge Klammer suggests, this argument is a confusion of the legal principles of Civ.R. 56 and procedural due process.
 {¶ 59} In order to be entitled to a trial, when a summary judgment motion is filed, appellants have to meet the burden set forth in Civ.R. 56. If the grant of summary judgment was appropriate, then no procedural violation occurred. Likewise, if the grant was inappropriate, it is reversed on the basis of failing to comply with the mandates of Civ.R. 56.
 {¶ 60} Yet, if appellants had not received notice of the summary judgment motion or the hearing on the motion (if there was one), then a due process argument could be made. There was no hearing in this case, but as to the motion for summary judgment the record contains no evidence that appellants were unaware of the motion. In fact, the evidence more than overwhelmingly suggests that they knew of the motion; they filed a motion in opposition and two motions to strike.
 {¶ 61} Thus, it appears that instead of asserting due process violations, appellants are arguing that the trial court: 1) improperly excluded evidence; 2) applied the facts incorrectly; 3) allowed inadmissible hearsay; 4) weighed the evidence, and; 5) cited the law incorrectly. Most of these arguments, specifically the second, fourth and fifth arguments, directly deal with the grant of summary judgment which is discussed at length above. Thus, the other remaining two arguments will be addressed below.
 {¶ 62} As to disregarded or excluded evidence, appellants claim that the trial court disregarded the fact that Brown was hired right after the lawsuit and that appellants were qualified to fill the position Brian Foley filled. Regarding Brown, the trial court's decision did not consider that Brown was hired after the lawsuit was filed. However, the trial court did consider that she was hired to perform Molnar's job. While it could be used to show that Judge Klammer was covering for age discrimination, the other two individuals who were hired, Kissig and Curtis were not substantially younger than Molnar and were both in the protected class. Therefore, the evidence that she was hired after the lawsuit is not substantial evidence of discrimination when considering the facts of this case. The trial court did not commit error when it failed to consider this factor.
 {¶ 63} As to Foley's position, it was not the position that appellants had previously performed. As aforementioned, he did not replace them and appellants could not offer evidence to the contrary. Thus, his appointment is irrelevant to the age discrimination claim.
 {¶ 64} Next, appellants contend that the trial court admitted inadmissible hearsay. They reference four instances of inadmissible hearsay. The first is found in paragraph seven of Judge Klammer's affidavit. They contend this paragraph is not based upon personal knowledge and, thus, should not have been admitted.
 {¶ 65} Civ.R. 56(E) provides in pertinent part that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Thus, according to that rule, affidavit and/or deposition testimony must be made on personal knowledge and in such fashion as would be admissible at trial.DiPietro v. Lighthouse Ministries, 159 Ohio App.3d 766,2005-Ohio-639, ¶ 21. "It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." Wiley v. United States (C.A.6, 1994), 20 F.3d 222, 226.
 {¶ 66} Paragraph seven of Judge Klammer's affidavit states:
 {¶ 67} "Prior to official commencement of my term in office, I contacted the Lake County Prosecutor's Office concerning the reorganization and restructuring of the Probate Court and its employees. The statutory authority for hiring and discharge of employees was also requested. On February 3, 2003, the Lake County Prosecutor's office provided this information. Attached as Exhibit 1 is a true and accurate copy of the memo I received from the Prosecutor's Office." (Judge Klammer Aff. ¶ 7).
 {¶ 68} Clearly, Judge Klammer could testify as to all the information contained in this paragraph since he has personal knowledge of all of these events. First, he knows whether he contacted the Lake County Prosecutor's Office and what request he made to them. Second, he knows that he received a letter from the Prosecutor's Office and what it says. Also, he knows whether the letter is a true and accurate copy of the one he received. Accordingly, this argument is meritless. Furthermore, this letter from the Prosecutor's Office could fall under the business exception to hearsay. Evid.R. 803(5).
 {¶ 69} The next three alleged instances of inadmissible hearsay are found in deposition testimony. The first one was about the amount of time Molnar took off from work. The second is the claim that VonHof told attorneys what was the applicable law. The third was that Lewis treated the Domestic Relations Judge poorly and treated a wheelchair bound litigant poorly.
 {¶ 70} During the depositions, Judge Klammer does not state whether he had personal knowledge of the above instances or whether someone told him of these instances. Thus, the statements in essence are hearsay. However, they are not inadmissible because they are not offered to prove the truth of the matter asserted. Instead, they are being used to show Judge Klammer's state of mind. In other words, the statements were not being used to show that Molnar took excess time off, that VonHof told attorneys the law, or that Lewis treated other judges and handicap litigants poorly. Instead, these statements are being used to show what Judge Klammer believed. His belief in these statements indicated to him that appellants could not adapt to his reorganization of the court.
 {¶ 71} Even if we assume that the above depositional statements were false or inaccurate, if Judge Klammer believed them and based his decision to terminate appellants on the basis of those beliefs, this does not show that the decision was motivated by age discrimination. Relying on false or inaccurate information and not knowing that is false is not evidence of age discrimination. Furthermore, appellants do not offer any evidence to show that Judge Klammer did not believe these statements. As such, the depositional statements were properly considered to determine Judge Klammer's state of mind. Accordingly, this argument lacks merit.
 2. Equal Protection {¶ 72} Next, appellants argue that their constitutional right to equal protection was violated. First, appellants argue they were treated differently because they are suing a judge. Second, appellants argue that equal protection was violated when the trial court found that their public policy claim of wrongful discharge failed.
 a. Treated Differently {¶ 73} The first argument is unfounded. The record is completely devoid of any indication that they were treated differently because they sued a judge. In fact, to ensure that there was no bias, a retired judge was appointed to sit as the acting judge of this case.
 b. Public Policy {¶ 74} As to the second argument, appellants argue in a one paragraph argument that the trial court erred when it dismissed their public policy tort. To establish that an employee was discharged in violation of public policy, a plaintiff must establish: 1) a clear public policy exists and is manifested in a state or federal constitution, statute or administrative regulation or in the common law (the "clarity" element); 2) dismissing employees under the circumstances would jeopardize the public policy (the "jeopardy" element); 3) the plaintiffs dismissal was motivated by conduct related to public policy (the "causation" element); and 4) the employee lacked an overriding, legitimate business justification for dismissal (the "overriding justification" element). Collins v. Rizkana, 73 Ohio St.3d 65,69-70, 1995-Ohio-135. See, also, Greeley v. Miami ValleyMaintenance Contractors, Inc. (1990), 49 Ohio St.3d 228 (Ohio Supreme Court first recognized the common law tort of wrongful discharge in violation of public policy). The clarity and jeopardy elements are issues of law, while the causation and overriding justification elements are factual determinations.
 {¶ 75} The trial court covered all its bases in ruling that summary judgment was appropriate on the public policy tort. First, it held that the clarity element was not met. It gave two reasons for this conclusion. It stated that a deputy clerk's at-will status is prescribed by statute, not common law and, as such, there is no clear public policy. Next, it stated, "the Ohio Supreme Court recently held that if the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent employee dismissals from interfering with realizing the statutory policy. Wiles v.Medina Auto Parts (2002), 96 Ohio St.3d 240, 244. * * * Because the plaintiffs have a broad area of statutory remedies available to them under R.C. 4112.14, the public policy underlying the statute is not jeopardized." Secondly, the trial court held that neither the third or fourth elements of wrongful discharge were met, since there was no evidence that Judge Klammer declined to appoint them based on their age and without overriding justification.
 {¶ 76} The trial court's third reason will be addressed first. As to the third and fourth element of Greeley, the trial court reasoned that they could not be met because there "was no evidence that Judge Klammer declined to appoint them based on their age and without overriding justification." It then added that there were legitimate reasons, non-age related, for his action.
 {¶ 77} Having already concluded under the statutory age discrimination claim that appellants failed to establish evidence that Judge Klammer terminated them based upon their age, we find that appellants failed to create a genuine issue of material fact on the third and fourth elements of the Greeley claim. The same reasons espoused for affirming the trial court grant of summary judgment on the statutory age discrimination equally apply to affirming the trial court's decision on the Greeley claim. As such, appellants' argument under this subsection lacks merit. Reaching this conclusion, we do not need to and will not address the trial court's remaining justifications for finding that theGreeley claim failed.
 C. Constitutionality of R.C. 4141.28 {¶ 78} Lastly, under this assignment of error, appellants argue that R.C. 4141.28 is unconstitutional. As aforementioned, Swindell, the Probate Court Administrator, sent paperwork to OBES stating that the reason appellants were not rehired was due to "reorganization of the court." At Judge Klammer's deposition, he stated that the reason appellants were not retained was due to loyalty and attitude.
 {¶ 79} Appellants urged the trial court to consider both the OBES letter and the depositional reasons when determining whether there was a genuine issue of material fact on the age discrimination claim. The trial court held that it could not consider the OBES letter. It making this determination, it stated:
 {¶ 80} "Plaintiff's reliance on Ohio Bureau of Employment Services forms to show that Judge Klammer stated different reasons for plaintiffs non-hire (lack of work) is misplaced. R.C.4141.28 forbids the use of such information `in any court in any action or proceeding therein' and denies its `admissibility in evidence in any action.' This court cannot consider such evidence. Bruce v. Pavlik (Apr. 17, 1997) Cuyahoga App. No. 70852, 1997 W.L. 186823 at 3." (04/05/04 J.E. on Evidentiary Rulings).
 {¶ 81} Appellants now argue on appeal that R.C. 4141.28 is unconstitutional and, as such, the trial court should have considered the letter. However, the constitutionality of the statute was not raised to the trial court.
 {¶ 82} In State v. Awan (1986), 22 Ohio St.3d 120, the Ohio Supreme Court held the following:
 {¶ 83} "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal."
 {¶ 84} Thus, this argument is waived and will not be addressed.
 {¶ 85} In conclusion, for all the above stated reasons, the trial court's granting of summary judgment for Judge Klammer on appellants' statutory and common law age discrimination claims was appropriate. Thus, this assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 86} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY RULING THAT THE FEDERAL CLAIM WAS BARRED BY THE DOCTRINE OF SOVEREIGN IMMUNITY. (JUDGMENT ENTRY APRIL 5)."
 {¶ 87} This assignment of error deals solely with the Federal ADEA claim asserted against Judge Klammer in his capacity as the probate court. The trial court found that the ADEA claim against Judge Klammer was barred by Eleventh Amendment immunity.
 {¶ 88} The United States Supreme Court has held that under the Eleventh Amendment to the United States Constitution states could not be sued for money damages under the ADEA. Kimel v.Florida Bd. of Regents (2000), 528 U.S. 62, 91 (explaining that the ADEA does not abrogate sovereign immunity under theEleventh Amendment because it is not a valid exercise of Congress' power to enact legislation to carry out the protections under theFourteenth Amendment to the Constitution).
 {¶ 89} Appellants do not disagree with the above statement of law, but rather claim that it is inapplicable. They contend that the probate court is not an arm of the state and, thus, theEleventh Amendment protections do not apply. Judge Klammer, on the other hand, claims that probate court is an arm of the state and the above law is applicable. As such, the issue presented to this court is whether the probate court is an arm of the state.
 {¶ 90} In 1997, the United States Court of Appeals, Sixth Circuit, was faced with a similar question to the one before us.Mumford v. Basinski (C.A.6, 1997), 105 F.3d 264. Specifically, it stated that the question before it was, "whether the Domestic Relations Court is a state of Ohio entity, or instead is an appendage of the Lorain County government, for section 1983 purposes." Id. at 268.
 {¶ 91} In answering this question, the Sixth Circuit looked to the Ohio Constitution, the Ohio Revised Code, and the structure of the courts. Id. at 268-269. It explained that the Ohio Constitution dictates that within the judicial system, "there shall be a court of common pleas and such divisions thereof as may be established by law serving each county of the state." Id. citing Ohio Const. Art. IV, § 4(A). It then went on to state that the state constitution also dictates standards controlling the election, residency, tenure, compensation, and eligibility of every Ohio common pleas judge. Mumford,105 F.3d at 268. It then looked to state statutes that delineated the jurisdiction of the common pleas court. Id.
 {¶ 92} Considering all the above, the Sixth Circuit determined that it was the state, rather than the county that was principally in charge of the courts of common pleas. Accordingly, it held, "an Ohio common pleas court is not a segment of county government, but an arm of the state for purposes of section 1983 liability and Eleventh Amendment immunity analyses." Id.
 {¶ 93} This case indicates that the Lake County Probate Court is an arm of the state and, thus, Eleventh Amendment immunity applies. However, appellants argued that Mumford has been overruled by Alkire v. Irving (C.A.6, 2003), 330 F.3d 802.
 {¶ 94} In Alkire, the Sixth Circuit was faced with the question of whether a county court was an arm of the state forEleventh Amendment purposes. Id. at 811. The Alkire court explained that in Mumford it had determined that a common pleas court was an arm of the state by principally relying on the fact that the state was in charge of the courts of common pleas. TheAlkire court explained that primarily relying on that fact as a basis for finding that the court was an arm of the state was incorrect in light of the United States Supreme Court's decision in Regents of the Univ. of Cal. v. Doe (1997), 519 U.S. 425 andHess v. Port Auth. Trans-Hudson Corp. (1994), 513 U.S. 30.
 {¶ 95} The Alkire court explained that in Doe and Hess,
the United States Supreme Court stated that who pays a damage judgment against an entity (purse factor) is the most important fact in arm-of-the-state analysis. Alkire, 330 F.3d at 8118-12, quoting Doe, 519 U.S. at 435 and Hess, 513 U.S. at 48. Since the trial court did not consider this purse factor in Mumford,
appellants contend that Mumford is inapplicable and the trial court erred in applying it to the case at hand.
 {¶ 96} Appellants are correct in concluding that according toAlkire, the Mumford analysis is incomplete to determine whether the Lake County Probate Court is an arm of the state. However, their conclusion that the holding in Mumford, stating that a common pleas court is an arm of the state, was overruled by Alkire is incorrect. The Sixth Circuit has clearly and recently stated that the Alkire decision did not overruleMumford. See S.J. v. Hamilton Cty., Ohio (C.A.6, 2004),374 F.3d 416; Triplett v. Connor (C.A.6, 2004), 109 Fed.Appx. 94.
 {¶ 97} Moreover, in S.J., the Sixth Circuit, in discussingAlkire, Mumford, and the factors to consider in the arm of the state analysis, stated that it doubted that the purse factor was the sole criterion for determining whether an agency is a state entity for sovereign immunity purposes. It explained that inHess, the United States Supreme Court stated that "the sovereign immunity doctrine is about money and dignity — it not only protects a state's treasury but also `pervasively * * * emphasizes the integrity retained by each State in our federal system.'" S.J. 374 F.3d 416 (emphasis in original), citingHess, 513 U.S. at 39. The court then explains:
 {¶ 98} "Examining the contours of related sovereign immunity doctrines reinforces the impression that values beyond guarding the public fisc play a role in the arm-of-the state inquiry. TheEleventh Amendment ordinarily bars all actions brought against a state itself, even injunctive actions that raise no risk of impact on the treasury. Conversely, it does not ordinarily bar injunctive actions against state officials, even when those actions may have a substantial impact on state finances.
 {¶ 99} "To the extent that considerations of dignity are relevant in determining whether an entity is protected by state sovereign immunity, one would expect this factor to weigh heavily in a suit against a state court. Such courts are the `adjudicative voice' of the state itself. That is particularly true in the context of a court system that, like Ohio's, is mandated by the state constitution to be uniform and to be supervised by one supreme court. While lower state courts may sometimes be funded by the counties where they sit, separation of powers concerns frequently preclude counties and other branches of government from denying reasonable funding for the operation of the courts." S.J., 374 F.3d 416 (internal citations omitted).
 {¶ 100} That said, we acknowledge that the above extract is dicta. In S.J., the Sixth Circuit was not asked to determine whether a common pleas court (the Hamilton County Juvenile Court) was an arm of the state. Rather, it was asked to determine whether a county juvenile training facility was an arm of the state.
 {¶ 101} Regardless, considering all the above, we find that the trial court properly held that the probate court was immune from the ADEA claim due to it being an arm of the state. This determination is derived from two salient factors. First, theMumford holding is still applicable law, even despite the arguments made by appellants and the Alkire holding. As shown above, the Sixth Circuit has expressly stated at least two times that the Alkire decision did not overrule Mumford.
 {¶ 102} Furthermore, after the Alkire decision was decided, the Sixth Circuit reaffirmed the Mumford holding at least twice. See Triplett, 109 Fed.Appx. 94, 96; Meyers v. FranklinCty. Court of Common Pleas (C.A.6, 2003), 81 Fed.Appx. 49. In both Triplett and Meyers, the court was faced with the question of whether a common pleas court (or a division thereof) was an arm of the state for purposes of Eleventh Amendment analysis. In both cases, the Sixth Circuit, citing to Mumford,
concluded that the common pleas court was an arm of the state.Triplett, 109 Fed.Appx. at 96; Meyers, 81 Fed.Appx. at 55. Thus, Mumford is still controlling.
 {¶ 103} Second, even if Mumford is not completely controlling on the issue, the dicta reasoning provided in S.J.
is logical and very persuasive. Thus, for those reasons, we find that sovereign immunity is applicable. Having made that determination, we must now address appellants' alternative argument.
 {¶ 104} Their alternative argument is that even if sovereign immunity is applicable, they would still be entitled to injunctive relief. Consequently, appellants conclude that the trial court should have only dismissed the action seeking monetary relief, but allowed the action seeking injunctive relief to proceed.
 {¶ 105} Appellants' complaint clearly alleges that besides seeking monetary relief, they were also seeking reinstatement, i.e. injunctive relief. Furthermore, although theEleventh Amendment does bar monetary relief in this situation, pursuant to the ADEA, injunctive relief (reinstatement) could still be obtained if the discrimination claim has merit. Board ofTrustees of Univ. of Ala. v. Garrett (2001), 531 U.S. 356, 374;Ex Parte Young (1908), 209 U.S. 123.
 {¶ 106} That said, this does not mean that this cause has to be remanded. Having already determined that there is no genuine issue of material fact on the age discrimination case brought under R.C. 4112.14, the ADEA claim for reinstatement would also fail for those same reasons. The Ohio test to determine age discrimination under R.C. 4112.14 is modeled after the test used to determine age discrimination under the ADEA. Mauzy,75 Ohio St.3d at 582, 1996-Ohio-265 (stating that the Ohio Supreme Court has adopted the federal case law analysis used under Title VII and the ADEA, Sections 621 through 634, Title 29, U.S. Code, when interpreting and deciding age discrimination claims brought under R.C. 4112.02 and 4112.14). Thus, appellants' alternative argument still fails. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 107} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING DEFENDANT RANDY KLAMMER'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 108} This assignment of error solely addresses the trial court's grant of summary judgment for Randy Klammer on appellants' defamation claim. As aforementioned, Randy Klammer is the son of Judge Klammer and is also a precinct committeeman for Lake County. At the Lake County Democratic Central Committee, Randy Klammer made statements about why Judge Klammer chose not to retain appellants. The statements were that appellants were not retained because they were dangerous, troublemakers, not trustworthy, and were disloyal. Appellants claim that these statements constitute actionable defamation.
 {¶ 109} After discovery, Randy Klammer moved for summary judgment asserting that his statements were constitutionally protected opinion and, thus, did not constitute actionable defamation. The trial court agreed and granted summary judgment in his favor. Appellants claim that the trial court's determination was erroneous.
 {¶ 110} In Ohio, defamation is a false statement published by a defendant acting with the required degree of fault that injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame or disgrace, or adversely affects the person's profession. A B-Abell Elevator Co., Inc. v.Columbus/Cent. Ohio Bldg. and Constr. Trades Council,73 Ohio St.3d 1, 7, 1995-Ohio-66; Cooke v. United Dairy Farmers, Inc.,
10th Dist. No. 02AP-781, 2003-Ohio-3118, ¶ 24. The essential elements of a defamation action, whether slander or libel, are that: 1) the defendant made a false statement of fact; 2) that the false statement was defamatory; 3) that the false defamatory statement was published; 4) that the plaintiff was injured; and 5) that the defendant acted with the required degree of fault.Matikas v. Univ. of Dayton, 152 Ohio App.3d 514,2003-Ohio-1852, ¶ 27, quoting Celebrezze v. Dayton Newspapers,Inc. (1988), 41 Ohio App.3d 343, 346-347.
 {¶ 111} Under the first prong, the statement made must be afactual statement. Statements of opinion are constitutionally protected statements that cannot be the basis of a claim for defamation. See Vail v. The Plain Dealer Publishing Co.,72 Ohio St.3d 279, 282, 1995-Ohio-187. (Emphasis added). See, also,Wampler v. Higgins, 93 Ohio St.3d 111, 121-122, 2001-Ohio-1293
(stating Ohio's categorical protection for opinions is also available to nonmedia defendants). Accordingly, if the trial court correctly concluded that the statements made by Randy Klammer were opinions, they were not actionable.
 {¶ 112} To determine whether a statement is constitutionally protected opinion, the court must examine the totality of the circumstances in which the statement was made. Scott v.News-Herald (1986), 25 Ohio St.3d 243, paragraph one of the syllabus. When considering the totality of the circumstances, the court must take into account: 1) the specific language at issue; 2) whether the statement is verifiable; 3) the general context of the statement; and 4) the broader context in which the statement appeared. Vail, 72 Ohio St.3d 279, 1995-Ohio-187, at the syllabus. Whether a statement is fact or opinion is a question of law to be determined by the court. Id.
 {¶ 113} Attached to appellants' motion in opposition to Randy Klammer's motion for summary judgment are affidavits from individuals who attended the meeting and heard Randy Klammer's comments regarding appellants. Mark Denman said that Randy Klammer stated that "(1) he (Judge Skok) had `problems with them [referring to appellants],' and that he thought they were `dangerous and troublemakers'; and that (2) they were not trustworthy." (Denman Aff. ¶ 4). Denman also swore that Randy stated that "he felt that they would not be a supporting staff to the judge's new position." (Denman Aff. ¶ 6). Denman also stated that later Randy "reiterated that he believed that Mary Jane, Rosemarie, and Irma were not trustworthy and dangerous." (Denman Aff. ¶ 8). Arlene Beck, also in attendance at the meeting, swore to the same statements. (Beck Aff. ¶ 4, 6, 8). Louise Hayden also swore to statements similar to the ones above. She stated that "Randy Klammer statements were a discussion that his father terminated the Plaintiffs because he believed they were not loyal." (Hayden Aff. ¶ 7).
 {¶ 114} Laden in all of these statements are words such as "thought" and "believed." These words automatically show that the speaker is stating his/her opinion and, as such, the statement does constitute a factual statement. Plough v. Schneider (Apr. 28, 1982), 9th Dist. No. 10496 (stating comments prefaced by the words "I believe" show the speaker is stating an opinion).
 {¶ 115} Furthermore, other words in Randy's statements such as "dangerous," "troublemakers" and "disloyal" also show that the statements were opinion and not factual. When the language used "lacks precise meaning and would be understood by the ordinary reader for just what it is — one person's attempt to persuade public opinion," then it is opinion and not fact. Vail,
72 Ohio St.3d at 282-83, 1995-Ohio-187. In an action against a hospital the words "unprofessionally and unconscionably" or disregarded "patient care" were found to be non-actionable. Toledo HeartSurgeons, Inc. v. Toledo Hosp., 154 Ohio App.3d 694,2003-Ohio-5172, ¶ 29. That language was deemed to be value-laden and subjective in view. Id.
 {¶ 116} Following that reasoning, the specific language at issue suggests that the statements were opinion. However, specific language is not the only consideration under the totality of the circumstances test; the verifiability and the general and specific context of the statements must also be considered.
 {¶ 117} As to verifiability, there is no indication that the statements were verifiable. Or, in other words, Randy Klammer did not imply that he had "first-hand knowledge" substantiating the opinions asserted. See Vail, 72 Ohio St.3d at 283,1995-Ohio-187. Instead, the statements are brief statements without any claim to a factual foundation. In Toledo, the court stated that standardless characterizations are not verifiable.Toledo, 154 Ohio App.3d 694, 2003-Ohio-5172. See, also, Verichv. Vindicator Printing Co., Inc., 152 Ohio App.3d 127, 130-131,2003-Ohio-1210 (stating that statements that a state representative had "zero credentials" for a position was not verifiable).
 {¶ 118} Furthermore, the context and setting in which these statements were made adds further support for the fact that the statements were opinion. These statements were made at a closed Democratic central committee meeting. Molnar asked Hayden to question those members as to why democratic employees were not retained by newly elected democratic judges. This prompted discussions about political loyalty to democratic party employees and judges. This type of discussion implies that the conversation is more about personal opinions.
 {¶ 119} Consequently, under the totality of the circumstances test, the statements were protected opinion and are not actionable under Ohio law. Accordingly, the first prong of defamation requiring a false statement of fact was not met. Thus, the trial court appropriately granted summary judgment for Randy on appellants' defamation claim. This assignment of error lacks merit.
 CONCLUSION {¶ 120} For the foregoing reasons, the trial court's grant of summary judgment to Judge Klammer on appellants' statutory and common law age discrimination claims are hereby affirmed. The trial court's holding that appellants' Federal ADEA claim was barred by the Eleventh Amendment to the United State Constitution is also hereby affirmed. Likewise, the trial court's grant of summary judgment for Randy Klammer on appellants' defamation claim is hereby affirmed.
Donofrio, P.J., Waite, J.
[1] Swindell stated that she did not make the comment. (Swindell Depo. 38).