*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0188P (6th Cir.)
File Name: 04a0188p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

S.J.,

    *Plaintiff-Appellee,*

    *v.*          No. 02-3852

HAMILTON COUNTY, OHIO;
HILLCREST TRAINING
SCHOOL; and WILLIAM H.
HAMILTON,

    *Defendants-Appellants.*

─────────────────

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 98-00603—Susan J. Dlott, District Judge.

Argued: December 9, 2003

Decided and Filed: June 22, 2004

Before: BOGGS, Chief Judge; and BATCHELDER and
SUTTON, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** David Todd Stevenson, HAMILTON COUNTY
PROSECUTING OFFICE, Cincinnati, Ohio, for Appellants.

Marc D. Mezibov, SIRKIN, PINALES, MEZIBOV &
SCHWARTZ, Cincinnati, Ohio, for Appellee. **ON BRIEF:**
David Todd Stevenson, Stephen K. Shaw, HAMILTON
COUNTY PROSECUTING OFFICE, Cincinnati, Ohio, for
Appellants. Marc D. Mezibov, Michael N. Budelsky,
SIRKIN, PINALES, MEZIBOV & SCHWARTZ, Cincinnati,
Ohio, for Appellee.

─────────────────

**OPINION**

─────────────────

BOGGS, Chief Judge. This case presents the question of
whether Hillcrest Training School, a juvenile facility created
pursuant to Ohio Rev. Code § 2151.65, is cloaked with
Ohio's sovereign immunity against a 42 U.S.C. § 1983 action
brought by a former Hillcrest resident. The district court held
that Hillcrest was not entitled to sovereign immunity. For the
reasons explained below, we affirm.

I

Plaintiff S.J., when a minor, was referred to Hillcrest by
order of the Hamilton County Juvenile Court. His complaint
alleges that he was sexually assaulted several times by a
fellow resident, R.B., who sneaked into his room at night.
The last attack took place on the night after S.J. had informed
a Hillcrest employee about the assaults. R.B. later admitted
attacking S.J., and was adjudicated a delinquent. S.J. sued
Hillcrest, its superintendent, and Hamilton County under
§ 1983, alleging that they violated his Fourteenth Amendment
rights by failing to investigate and prevent sexual abuse, and
failing to train Hillcrest employees adequately. The
defendants moved for summary judgment on the basis of
sovereign immunity, arguing that Hillcrest is an arm of the
State of Ohio because it was created by state law and is
overseen by the juvenile court. The magistrate judge
disagreed, and recommended denying the motion. The

district court adopted the magistrate's recommendation in relevant part.

Later, the defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction, in effect asking the district court to revisit its ruling on sovereign immunity.[1] The motion argued that dismissal was necessary in light of this court's unpublished decision in *Oswald v. Lucas County Juvenile Det. Ctr.*, No. 99-3771, 2000 U.S. App. LEXIS 27990 (6th Cir. Oct. 30, 2000), which held that a "juvenile detention facility" defined under former Ohio Rev. Code § 2151.34 (now Ohio Rev. Code § 2152.41) was "part of the juvenile court, which is an arm of the state," and therefore was entitled to sovereign immunity. *Id.* at ** 5-6. However, the district court concluded that the "juvenile detention facility" at issue in *Oswald* was distinguishable from Hillcrest, a juvenile facility defined under Ohio Rev. Code § 2151.65[2] and it denied the motion to dismiss.

Defendants timely appealed. Under the collateral order doctrine, we have jurisdiction over an appeal from a district court's denial of sovereign immunity to a government entity that claims to be an "arm of the state." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993); *Tenn. v. United States Dep't of Transp.*, 326 F.3d 729, 733 (6th Cir. 2003). We review *de novo* the legal question of whether Hillcrest is entitled to sovereign immunity, *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 836 (6th Cir. 1997), but accept any pertinent factual findings by the district court unless they are clearly erroneous,

---

[1] The district court properly construed this late-filed motion as a "suggestion" that it lacked subject-matter jurisdiction. Such a filing may be made at any time. Fed. R. Civ. P. 12(h)(3); *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

[2] We will henceforth refer to Hillcrest, and other facilities under § 2151.65, as "juvenile training facilities," to distinguish them from the "juvenile detention facilit[ies]" authorized by § 2152.41.

*Keller v. Cent. Bank of Nigeria*, 277 F.3d 811, 815 (6th Cir. 2002).

## II

### A

Hillcrest operates within a statutory framework that vests both the state and Hamilton County with a role in its administration. Juvenile training facilities such as Hillcrest belong to a broader class of facilities referred to in the Ohio Code as "single county or joint-county facilities." Ohio Rev. Code § 307.021(A) (authorizing board of county commissioners to construct such facilities). The same statutory provision states generally that "the juvenile court [is] . . . the branch of state government having jurisdiction over any such . . . juvenile . . . facilities." *Ibid.* Hillcrest's specific authorizing statute, Ohio Rev. Code § 2151.65, provides:

> Upon the advice and recommendation of the juvenile judge, the board of county commissioners may provide by purchase, lease, construction, or otherwise a school . . . or other facilit[y] where delinquent children, . . . dependent children, abused children, unruly children, . . . or neglected children or juvenile traffic offenders may be held for training, treatment, and rehabilitation. . . . Such . . . facility . . . shall be maintained as provided in Chapters 2151. and 2152. of the Revised Code. [ . . . ]
>
> The juvenile court shall determine:
>
> (A) The children to be admitted to any school . . . or other facility maintained under this section;
> (B) The period such children shall be trained, treated, and rehabilitated at such facility;
> (C) The removal and transfer of children from such facility.

Thus, by the terms of the statute, the initial request to create a facility such as Hillcrest originates from the juvenile court, which is a division of the Ohio Court of Common Pleas. Ohio Rev. Code § 2151.08. The county possesses the discretion to grant or refuse this initial request. However, if the county agrees, the facility must "be maintained as provided in [Ohio Rev. Code §§] 2151. and 2152." *Ibid.* These sections authorize the juvenile court to demand funds from the county that are reasonably necessary to operate Hillcrest, as part of the court's annual appropriation for "administrative expenses." Ohio Rev. Code § 2151.10. The county must provide the funds requested if they are "reasonably necessary to meet . . . [the] administrative expenses of the court" and its facilities. *Ibid.*; *see* § 2151.13; *State ex rel. Wilke v. Hamilton County Bd. of Comm'rs*, 734 N.E.2d 811, 818 (Ohio 2000) (county must pay court's funding request unless it can prove that request is an abuse of discretion). The statutory scheme also authorizes the juvenile court to appoint Hillcrest's superintendent and to determine his compensation. Ohio Rev. Code § 2151.70.

Hillcrest receives the large majority of its funding from Hamilton County. It also receives some funds from the Ohio Department of Youth Services and the Ohio Department of Mental Health, and it is subject to standards promulgated by the Department of Youth Services.

## B

The text of the Eleventh Amendment explicitly refers to the immunity of the states from suits "commenced or prosecuted . . . by Citizens of another State." U.S. Const., amend. XI. However, the Supreme Court has made clear that the sovereign immunity of the states "neither derives from nor is limited by the terms of the Eleventh Amendment," *Alden v. Maine*, 527 U.S. 706, 713 (1999), and that it extends to actions brought against a state by its own citizens, *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Sovereign immunity applies not only to the states themselves, but also to "state

instrumentalities," *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997), or, in other words, to those government entities that act as "arm[s] of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). However, it "does not extend to counties and similar municipal corporations." *Ibid.*

Because Ohio counties lack sovereign immunity, *see ibid.* (holding that an Ohio school board lacked immunity because it was "more like a county" than an arm of the state); *Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003), we affirm, without further discussion, the portion of the district court's order denying immunity to defendant Hamilton County.

The difficult issue is determining whether the same is true of Hillcrest itself – and, derivatively, of its superintendent, Mr. Hamilton, since for the purpose of sovereign immunity "individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire*, 330 F.3d at 811; *see Kentucky v. Graham*, 473 U.S. 159, 165 (1985).[3] Hillcrest presents a two-step argument in support of its claim of sovereign immunity. It contends that the Hamilton County Juvenile Court is itself an arm of the state, and that Hillcrest is sufficiently bound to the Juvenile Court to count as "a part

---

[3] In theory, Mr. Hamilton might be immune, even if Hillcrest is not, if he was *personally* acting as an "arm of the state" in connection with the alleged conduct described in S.J.'s complaint – in effect, if his actions or omissions giving rise to S.J.'s claim were prompted by a state statute. *See Brotherton v. Cleveland*, 173 F.3d 552, 563 (6th Cir. 1999).

However, the standard to establish such a defense is rigorous, and Mr. Hamilton does not satisfy it. A local actor who "makes conscious policy decisions," and does not simply "mechanically adopt and enforce . . . a state policy," cannot claim to have been acting as an arm of the state under this theory. *Id.* at 565.

Here, while Mr. Hamilton was authorized by statute to supervise the juvenile facility at Hillcrest, the statute did not instruct him about how to exercise that authority. *See* Ohio Rev. Code § 2151.70. His entitlement to sovereign immunity thus stands or falls with that of Hillcrest.

of" the court, thereby entitling it to share in the court's immunity. Appellant Br. at 7.

To determine whether an entity is an arm of the state, courts have traditionally looked to several factors, including: (1) whether the state would be responsible for a judgment against the entity in question; (2) how state law defines the entity; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding. *Brotherton*, 173 F.3d at 560 (summarizing past decisions). In an earlier case whose analysis focused upon state law, we held that an Ohio Court of Common Pleas was an arm of the state cloaked with sovereign immunity. *Mumford v. Basinski*, 105 F.3d 264, 269 (6th Cir. 1997); *see also Kelley v. Mun. Cts.*, 97 F.3d 902, 907-08 (7th Cir. 1996) (holding that municipal court was a unit of the judicial branch of the state entitled to sovereign immunity); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (per curiam) (same); *Harris v. Mo. Ct. of App., W. Dist.*, 787 F.2d 427, 429 (8th Cir. 1986) (same; Missouri state court); *cf. Foster v. Walsh*, 864 F.2d 416, 418-19 (6th Cir. 1988) (per curiam) (determining that state court is not a "person" suable under 42 U.S.C. § 1983).

Our recent decisions have modified this arm-of-the-state framework, in light of Supreme Court opinions that "ha[ve] . . . explicitly [stated] that . . . the most important factor bearing on the Eleventh Amendment question" is "who would pay for a damage judgment" against the entity being sued. *Alkire*, 330 F.3d at 811 (citing, *inter alia*, *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 430 (1997)). The emphasis on "who pays" is substantial: our recent decisions have left open the question of "[w]hether we view as dispositive [the] emphasis on the State treasury, or [simply] interpret it as placing significant weight on one factor of a multi-factor test." *Brotherton*, 173 F.3d at 561.

*Alkire v. Irving* has been our latest word on this evolving legal issue. In *Alkire*, a § 1983 action against an Ohio county court, we expressed some doubt about the continued validity

of *Mumford*'s reasoning, noting that *Mumford* had not taken into account, as the Supreme Court requires, whether the state would be legally responsible for a judgment against an Ohio court. *See Alkire*, 330 F.3d at 811. We did not decide whether *Mumford* was correct; instead, we remanded the issue so that the federal district court could engage in fact finding on the question of whether a judgment against the county court would be paid by a county or by the state itself, and could apply the proper arm-of-the-state analysis in the first instance. *Id.* at 813. We have not yet had an opportunity to re-examine those facts. *Cf. Harmon v. Hamilton County Ct. Of Common Pleas*, 83 Fed. Appx. 766, 768 (6th Cir. Dec. 8, 2003) (unpublished order) (concluding that it was "not clear," in light of *Alkire*, whether an Ohio court of common pleas had sovereign immunity).

Resolving the present case does not require us to decide whether one of the several *Mt. Healthy* criteria has now become the sole criterion for determining whether an agency is a state entity for sovereign immunity purposes. But there are significant reasons to doubt such a suggestion. The Supreme Court explained in *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994), that the sovereign immunity doctrine is about money *and* dignity – it not only protects a State's treasury, but also "pervasively . . . emphasizes the integrity retained by each State in our federal system." *Id.* at 39; *see id.* at 47 (noting that when immunity factors cut in different directions, "the Eleventh Amendment's twin reasons for being remain our prime guide" in arm-of-the-state inquiry). Indeed, in the important recent case of *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743 (2002), the Court renewed that emphasis, declaring: "The *preeminent* purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities." *Id.* at 760 (emphasis added).

Examining the contours of related sovereign immunity doctrines reinforces the impression that values beyond guarding the public fisc play a role in the arm-of-the-state

inquiry. The Eleventh Amendment ordinarily bars *all* actions brought against a State itself, even injunctive actions that raise no risk of an impact on the treasury. *See Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984). Conversely, it does *not* ordinarily bar injunctive actions against state officials, even when those actions may have a substantial impact on state finances. *See Edelman v. Jordan*, 415 U.S. 651, 667 (1974).

To the extent that considerations of dignity are relevant in determining whether an entity is protected by state sovereign immunity, one would expect this factor to weigh heavily in a suit against a state court. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938) ("[T]he constitution of the United States . . . recognizes and preserves the autonomy and independence of the states . . . in their judicial departments."). Such courts are the "adjudicative voice" of the state itself. *Harris*, 787 F.2d at 429. That is particularly true in the context of a court system that, like Ohio's, is mandated by the state constitution to be uniform and to be supervised by one supreme court. Ohio Const. art. IV, § 5; *Foster*, 864 F.2d at 418. While lower state courts may sometimes be funded by the counties where they sit, separation of powers concerns frequently preclude counties and other branches of government from denying reasonable funding for the operation of the courts. *See, e.g.*, Ohio Rev. Code § 307.01(B); *State ex rel. Weaver v. Lake County Bd. of Comm'rs*, 580 N.E.2d 1090, 1092 (Ohio 1991); *Mumford*, 105 F.3d at 269; *cf. Tennessee v. Lane*, 124 S. Ct. 1978, 1991 n.16 (2004) (observing that "the provision of judicial services" is "an area in which local governments are typically treated as arms of the state for Eleventh Amendment purposes.") (punctuation omitted).

In the present case, however, we are asked only to determine whether Hillcrest is an arm of the state, not whether the Hamilton County Juvenile Court itself is such. We conclude that Hillcrest is not an arm of the state.

As noted above, our inquiry begins by asking who would be responsible for a judgment against Hillcrest. Hillcrest's brief concedes (consistent with the magistrate judge's finding, adopted by the district court) that Hamilton County, not the state of Ohio, would pay such a judgment. Appellant Br. at 18. Thus, this "important" factor weighs against sovereign immunity. *Doe*, 519 U.S. at 430.

The second factor is how state law defines Hillcrest. As we have noted, the authorizing statute describes Hillcrest as a "single-county juvenile facility," rather than, for example, as a state facility. Ohio Rev. Code § 2151.65. However, many of the relevant statutory provisions suggest a significant connection between the state and Hillcrest. Under Ohio law, it is "a public purpose and function of the state" to "acquire, construct, [and] renovate" training facilities such as Hillcrest. Ohio Rev. Code § 307.021(A). The counties act as "state agencies . . . perform[ing] duties of the state" in carrying out such capital improvements. *Ibid.*[4] Moreover, the juvenile court, a "branch of state government," exercises "jurisdiction" over Hillcrest. *Ibid.* We conclude that the state-law factor somewhat supports extending sovereign immunity to Hillcrest, though other entities, such as a court itself, would present a stronger claim to sovereign immunity in this regard.

Turning to the third factor, state control, we find that Ohio exercises some, but limited, control over Hillcrest. The Hamilton County Juvenile Court, a part of the Ohio judicial system, controls the admission of juveniles to the facility. The court appoints Hillcrest's supervisor and sets his salary, though it does not administer Hillcrest directly. The juvenile court also possesses discretion over the facility's budget:

---

[4] We note that this provision, by its terms, applies only to tasks performed in connection with the acquisition, construction, or renovation of juvenile facilities, and not to the ordinary operations of such facilities, which are the activities that gave rise to S.J.'s claim here.

within reasonable limits, its funding requests for Hillcrest must be honored by the county.

On the other hand, the authorizing statute vests Hamilton County with discretion over the crucial decision of whether to create a facility such as Hillcrest at all. Ohio Rev. Code § 2151.65. This fact marks an important difference between Hillcrest and the juvenile *detention* facility at issue in this court's unpublished decision in *Oswald*. *Oswald* concluded that "[u]nder Ohio law, a county juvenile detention center is part of the juvenile court, which is an arm of the state." 2000 U.S. App. LEXIS 27990, at *2 (citing former Ohio Rev. Code § 2151.34). We agree with the district court that *Oswald* is distinguishable from the present case.[5] Former § 2151.34, now Ohio Rev. Code § 2152.41, the provision that authorized the "juvenile detention facility" at issue in *Oswald*, provides that the county "*shall*" create the detention facility upon the recommendation of the juvenile court. *Ibid.* (emphasis added); *see S.J. v. Hamilton County*, No. C-1-98-603, Order Denying Defendant's Motion to Dismiss, slip op. at 4. Here, in contrast, § 2151.65 provides only that the county "*may*" construct a juvenile facility such as Hillcrest, if the juvenile court so recommends. The difference in wording, at a crucial point, in two such closely related statutory provisions as §§ 2152.41 and 2151.65, clearly vests the county with authority to grant or deny the juvenile court's initial request to create a facility such as Hillcrest.

In so construing this statutory language, we recognize that Ohio law places limits on the interaction between a legislative entity such as Hamilton County's Board of Commissioners and a judicial entity such as the Hamilton County Juvenile Court. Ohio's constitution forbids "granting to a legislative body . . . the 'power of the purse' over judicial administration." *State ex rel. Johnston v. Taulbee*, 423

---

[5]As an unpublished decision of this court, *Oswald* also lacks binding precedential value.

N.E.2d 80, 83 (Ohio 1981). "Common pleas courts and their divisions possess inherent authority to order funding that is reasonable and necessary to the court's administration of its business." *Wilke*, 734 N.E.2d at 818. In our judgment, the co-operative scheme created by Ohio Rev. Code § 2151.65 does not offend these principles. Giving the county a say in the initial creation of Hillcrest is not the same as giving it a say in the core functions of the juvenile court. Section 2151.65 authorizes the creation of a separate, subsidiary government entity that is to be partially administered by the juvenile court, when the court and the county agree to do so. Once such a facility is created, the sphere of "judicial administration" presumably extends to include the new entity, and the statutory scheme accordingly denies the county discretion in funding Hillcrest's operations, consistent with Ohio's law of separation of powers. *See ibid.*

On balance, we conclude that the state control factor favors sovereign immunity, though not as strongly as it would in the case of a juvenile detention facility under § 2152.41 (as in *Oswald*) or an Ohio court itself.

The final factor, the source of Hillcrest's funding, can be dealt with quickly. The parties have stipulated that the great majority of Hillcrest's funding comes from Hamilton County, not the state of Ohio. Hillcrest's budget in 2000 was approximately $9,000,000; approximately $710,000 of this came from state sources, and the rest from the county. Accordingly, this factor weighs strongly against extending sovereign immunity to Hillcrest.

Thus, of the four factors typically employed in the arm-of-the-state inquiry, two (status under state law, and level of state control) weigh somewhat in favor of sovereign immunity, and two (responsibility for a judgment, and source of funding) clearly weigh against sovereign immunity. Because our precedents and the Supreme Court's case law still single out the factor of responsibility for a judgment as the most important (albeit not exclusive) determinant of arm-

of-the-state status, we hold that Hillcrest, as a juvenile training facility under Ohio Rev. Code § 2151.65, is not entitled to assert sovereign immunity as an arm of the state of Ohio.  Accordingly, the district court properly denied the defendants' motion to dismiss S.J.'s complaint for lack of subject matter jurisdiction.

### III

For the foregoing reasons, the district court's order is AFFIRMED.