NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0151n.06
Filed: February 20, 2009

No. 06-2512

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PATRICIA BARACHKOV;<br>NANCY ENGLAR; and<br>CAROL DIEHL, | ) ) ) ) | |
| Plaintiff-Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED<br>STATES DISTRICT COURT FOR<br>THE EASTERN DISTRICT OF |
| 41B DISTRICT COURT;<br>LINDA DAVIS, Chief Judge; and<br>TOWNSHIP OF CLINTON, | ) ) ) ) | MICHIGAN<br><br>OPINION |
| Defendants-Appellees. | ) | |

**Before:     BATCHELDER and MOORE, Circuit Judges; and BUNNING, District Judge.**[*]

**DAVID L. BUNNING, District Judge.** Patricia Barachkov, Nancy Englar and Carol Diehl, employees of the 41B District Court in Clinton Township, Michigan, were fired from their jobs in July 2004. Following their terminations, Appellants filed an action under 42 U.S.C. § 1983, alleging that Appellees had violated Appellants' First and Fourteenth Amendment rights by ending their employment because of interview statements Appellants made as part of a management oversight review conducted by the Michigan State Court Administrative Office (SCAO). The district court granted defendants' motion for summary

---

[*]The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

judgment, as it concluded that 41B District Court and Clinton Township were entitled to sovereign immunity, and that plaintiffs had failed to demonstrate that any constitutional violations had occurred. For the reasons stated below, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

Appellee 41B District Court is a Michigan trial court assigned jurisdiction over traffic violations, civil and criminal infractions, small claims, and probation oversight. At times relevant to this case, 41B District Court was comprised of two physically separate divisions, one serving the city of Mt. Clemens, and the other serving Clinton Township. Each municipality was responsible for maintaining, financing and operating its respective division of the court.

Appellants were employees of the Clinton Township division of the court until their terminations in July, 2004. Appellants Barachkov and Englar were employed as court clerks, while Appellant Diehl was a court cashier. During Appellants' employment, Linda Davis was Chief Judge of the 41B District Court and was assigned supervisory authority over personnel in both locations by law, and possessed the authority to hire, fire, discipline, or discharge employees. Chief Judge Davis and Judge John Foster sat in the Mt. Clemens location, while Judge William Cannon sat in Clinton Township.

In late May 2004, Deborah Green, a representative of the SCAO, informed Chief Judge Davis that the SCAO would soon be conducting a management oversight review into the operations and performance of the 41B District Court. On June 28, 2004, Chief Judge

2

Davis held a staff meeting in which she advised the district court staff that, as part of the SCAO investigation, each employee of the court would be interviewed. At this meeting, Chief Judge Davis emphasized the serious nature of the investigation and that the need for honesty was paramount. She informed the employees that no one would be disciplined for previous wrongs, and that no one would lose their jobs if they were honest with the interviewer.

Green independently interviewed each court employee; Chief Judge Davis did not participate in the investigation. Following completion of the interviews, Green concluded that Appellants Barachkov, Diehl, and Englar had lied and withheld information, and had coerced others to do the same. Appellants allege that their answers to Green's questions were honest and that Green asked questions about topics on which they had no personal knowledge.

On July 15, 2004, Chief Judge Davis fired the Appellants. Along with a representative of the SCAO, Chief Judge Davis met individually with each Appellant and informed her that she was being terminated due to her responses during the interview. Appellants were not provided with advance notice of the terminations or a hearing in which they could dispute the reasons for their dismissal. Appellants contend that their terminations were a result of Chief Judge Davis' desire to advance her political and personal agenda by forcing Judge Cannon to retire, and that they were fired for failing to provide false information about Judge Cannon's management of the Clinton Township division of the 41B District Court.

## B.     Procedural Background

Appellant Barachkov commenced an action pursuant to § 1983 and various state

laws in the United States District Court for the Eastern District of Michigan in October, 2004. Shortly after, Appellants Diehl and Englar followed suit and filed identical actions. On March 31, 2006, the district court consolidated the cases into a single action. Appellees thereafter filed motions for summary judgment alleging that Clinton Township and the 41B District Court were entitled to sovereign immunity and that Appellants could not, as a matter of law, establish any constitutional violations. The district court agreed and granted Appellees' motion. Appellants timely filed the present appeal from the district court's order. They raise four issues on appeal, arguing the district court erred in (1) dismissing 41B District Court as a party on Eleventh Amendment grounds; (2) granting summary judgment on their First Amendment retaliation claim; (3) granting summary judgment on their Fourteenth Amendment procedural due process claim; and (4) dismissing their claims for prospective injunctive relief against Chief Judge Davis in her official capacity. We will discuss each of these issues in turn.

## II. Analysis

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*

4

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), it must produce evidence showing that a genuine issue remains, *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).

The court must credit all evidence presented by the nonmoving party and draw all justifiable inferences in that party's favor. *Id.* We must "assess the proof to determine whether there is a genuine need for trial," and "[t]he proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the plaintiff." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 375 (6th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "We review de novo a district court's grant of summary judgment." *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006).

### B.    Sovereign Immunity

"From birth, the States and the Federal Government have possessed certain immunities from suit in state and federal courts." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc). This immunity "flows from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution" and "applies to claims against a State by citizens of the same State", "claims against a State by citizens of another State," and "actions against state officials sued in their official capacity for money damages." *Id.; see Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002); *Edelman v. Jordan*, 415 U.S. 651, 664-66 (1974). "'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' i.e., against the State." *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). This immunity, however, is subject to several exceptions:

5

> A State may elect to waive that immunity through legislation, or through its conduct in litigation. The immunity does not attach if the lawsuit is not against the State or an "arm of the state." The immunity "does not extend to counties and similar municipal corporations." The immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law.

*Ernst*, 427 F.3d at 358 (citations omitted). "Whether immunity exists in a given case is a question of constitutional law that we review de novo." *Id.* at 359 (citing *S.J. v. Hamilton Co.*, 374 F.3d 416, 418 (6th Cir. 2004)).

In determining whether a public entity is an "arm of the state" entitled to immunity, or a "political subdivision" which is not, we consider several factors: (1) the potential liability of the State for any judgment against the entity; (2) the language used by state statutes and courts to refer to the entity, and the degree of state control and veto power over the entity's actions; (3) whether the board of the entity is appointed by state or local officials; and (4) whether the entity's functions fall within the traditional purview of state or local government. *Id.* at 359 (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 51 (1994)). We have emphasized that "the question of who pays a damage judgment against an entity [is] the most important factor in arm-of-the-state analysis," *Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003), and that the inquiry into liability must focus on "the state treasury's *potential* legal liability for the judgment, not whether the state treasury will pay for the judgment in [*this*] case," *Ernst*, 427 F.3d at 359.

Focusing only on the first factor of the analysis, Appellants contend that sections 600.8103(3) and 600.8104(1)(b) of the Michigan Compiled Laws, and the holding of *Cameron v. Monroe County Probate Court*, 579 N.W.2d 859 (Mich. 1998), establish that Clinton Township - and not the State of Michigan - will be liable for any judgment against

6

the 41B District Court thereby precluding that court's entitlement to sovereign immunity. This argument is unpersuasive for two reasons. One, the statutes and case law cited by Appellants do not conclusively determine that the State of Michigan will not be potentially liable for any judgment against the 41B District Court. And two, the argument understates the importance of the remaining factors in the arm-of-the-state analysis.

First, although the Michigan statutes cited by Appellants establish that Clinton Township provides operational financing for the 41B District Court, they do not conclusively state who will ultimately pay for any judgment against this state district court. *See* Mich. Comp. Laws § 600.8103(3) ("A district of the third class is a district consisting of 1 or more political subdivisions within a county and in which each political subdivision comprising the district is responsible for maintaining, financing and operating the district court within its respective political subdivision except as otherwise provided in this act."); § 600.8104(1)(b) ("The term 'district funding unit' or 'district control unit' means . . . [t]he city or the township in districts of the third class . . . .").

Equally unavailing is Appellants' reliance upon the holding of *Cameron*. In that case, former employees of a probate court brought suit against the court and its judge alleging civil rights violations. Pursuant to a mediation agreement, a $25,000 judgment was entered against the probate court, and paid to plaintiffs by the State of Michigan. The probate court filed a third party-complaint seeking indemnification from its local funding unit Monroe County. The Michigan Supreme Court held that "the probate court is not entitled to indemnification from the county here because the underlying claim was resolved at no cost to the probate court." *Id.* at 862. In reaching this conclusion, however, the court also stated that "[i]f the probate court had been found liable to plaintiff, the county would be

7

liable for any resulting judgment as a matter of law." *Id.* It is presumably upon this statement that Appellants rely for the proposition that the State of Michigan is not potentially liable for any judgment in this case. However, this statement does not establish that the State of Michigan is not potentially liable for any judgments against a district court; on the contrary, as this statement was made in the context of a proceeding for indemnification, it only establishes that when a judgment rendered against a district court has been paid by the State, the county will be responsible for reimbursing the State. The fact that a county may be called upon to indemnify the State does not resolve the question of whether the State bears any potential legal liability with respect to judgments against district courts of the third class such as the 41B District Court. *Cf. Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997) ("[I]t is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant.").

Second, our recent decisions make clear that, "[w]hile there can be little doubt that the state-treasury inquiry will generally be the most important one, . . . it is not 'the sole criterion for determining whether an agency is a state entity for sovereign immunity purposes.'" *Ernst*, 427 F.3d at 364 (quoting *S.J.*, 374 F.3d at 421). The sovereign immunity doctrine encompasses values beyond guarding the public fisc, *S.J.*, 374 F.3d at 421, protecting not only a State's treasury, but also its dignity, by "pervasively . . . emphasiz[ing] the integrity retained by each State in our federal system." *Hess*, 513 U.S. at 39. Illustrating this principle is the Eleventh Amendment's bar against "*all* actions brought against a state itself, even injunctive actions that raise no risk of an impact on the

8

treasury." *S.J.*, 374 F.3d at 421.

Considerations of dignity are particularly relevant in a suit against a state court, which is the "adjudicative voice" of the State itself. *See S.J.*, 374 F.3d at 420. "That is particularly true in the context of a court system that, like [Michigan's], is mandated by the state constitution to be uniform and to be supervised by one supreme court." *Id. at 421-22*; *see* Mich. Const. art. VI, §1 ("The judicial power of the state is vested exclusively in one court of justice . . . ."); Mich. Comp. Laws § 600.8101(1) ("The state is divided into judicial districts of the district court each of which is an administrative unit subject to the superintending control of the Supreme Court."). Therefore, "[i]mportant as the monetary liability factor may be, it is not the only factor." *Ernst*, 427 F.3d at 365.

In this case, neither party has produced persuasive evidence regarding who - the State of Michigan or Clinton Township - will ultimately be responsible for paying any judgment rendered against the 41B District Court. Additionally, the district court made no findings as to the four factors detailed above. Accordingly, remand of this issue to the district court is warranted. That court can initially determine whether the State of Michigan will be potentially liable for a judgment against the 41B District Court,[1] as well as undertake an analysis of the other three factors detailed above to determine whether 41B District Court is entitled to sovereign immunity. *See Alkire*, 330 F.3d at 813 (remanding to the district court to analyze a claim of sovereign immunity).

---

[1] Recently, one federal court in Michigan has held that the State of Michigan is not potentially liable for judgments against a district court of the third class which arise out of employment disputes. *Pucci v. Nineteenth Dist. Court*, 565 F. Supp. 2d 792, 805 (E.D. Mich. 2008) (relying on Mich. Comp. Laws § 600.591(12) and *Kain v. State*, 311 N.W.2d 351 (Mich. Ct. App. 1981), to conclude that "the state is not responsible for employment-related claims"). [It is important to note, however, that the *Pucci* court did not undertake an analysis of all four factors; its holding regarding sovereign immunity was based solely on the first factor of the "arm of the state" analysis.]

## C.     First Amendment Retaliation

Appellants allege that they were discharged in retaliation for their refusal to give false information during interviews conducted by an independent state agency as part of a formal investigation into the performance and internal operations of the Clinton Township division of the 41B District Court.  Despite the arguments of both parties, this appeal does not require us to determine the veracity of the speech at issue, or whether Judge Davis believed Appellants lied during their interviews.  On the contrary, we need determine only whether Appellants can establish the existence of a genuine issue of material fact that they were terminated for engaging in speech protected by the First Amendment.

This court has developed a three-step test for analyzing claims of First Amendment retaliation made by public employees.  First, the employee must show that, as a matter of law, the speech at issue was protected.  *Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007) (citing *Taylor v. Kieth*, 338 F.3d 639, 643 (6th Cir. 2003)).  In order for a government employee's speech to warrant First Amendment protection, the employee (1) "must have spoken 'as a citizen,' and (2) must have 'address[ed] matters of public concern.'" *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007) (alteration in original) (quoting *McMurphy v. City of Flushing*, 8002 F.2d 191, 197 (6th Cir. 1986) (holding that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior").  Additionally, the employee must demonstrate that her "interest in

the speech outweighs the government's countervailing interest in promoting the efficiency of the public service it provides as an employer." *Taylor v. Keith*, 338 F.3d 639, 643 (6th Cir. 2003). Second, if an employee is able to successfully establish that her speech was protected under the First Amendment, the employee must then show that her termination "would chill an ordinary person in the exercise of his First Amendment rights." *Id.* "Finally, the employee must present sufficient evidence to create a genuine issue as to whether his speech was a substantial or motivating factor in the employer's decision to discipline or dismiss." *Id.*

In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court clarified what it means to "speak as a citizen" by holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. The determinative factor under *Garcetti* is not where, or to whom, the employee communicated, but rather whether the employee communicated pursuant to his or her official duties. *Weisbarth*, 499 F.3d at 545. "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Garcetti*, 547 U.S. at 421-22.

This court's recent decision in *Weisbarth* addressed the application of *Garcetti* to speech made during an interview with an outside consultant. In *Weisbarth*, the plaintiff, a park ranger for the Geauga Park District, filed a § 1983 action claiming First Amendment

retaliation after she was fired from her job. She alleged that her termination resulted from the honest answers she gave to questions posed by an outside consultant hired to investigate morale and performance problems within the ranger department. The district court dismissed Weisbarth's complaint on the ground that she had failed to state a claim that the speech at issue was protected under the First Amendment, and Weisbarth appealed. This court affirmed, holding that, in speaking to the consultant, Weisbarth "spoke pursuant to her official duties rather than 'as a citizen,' and her claim was therefore properly dismissed." *Id.* at 546.

In so holding, this court found Weisbarth's argument that her interview with the consultant was not part of her "official duties" as a park ranger to be unpersuasive; cooperation with an outside consultant is an ad hoc duty which falls "within the scope of an employee's official responsibilities despite not appearing in any written job description." *Id.* at 544. This court noted that because Weisbarth was specifically asked by her employer to speak with the consultant and to comment on departmental morale and performance, her speech "indisputably 'ow[ed] its existence to [her] professional responsibilities,'" thereby precluding this court from finding that Weisbarth spoke "as a citizen." *Id.* (second alteration in original) (quoting *Garcetti*, 547 U.S. at 421).

Just as it did in *Weisbarth*, the holding of *Garcetti* controls the outcome of the case at bar. Here, the speech in question occurred during interviews conducted by a representative of the SCAO pursuant to a formal management oversight review of the 41B District Court. As in *Weisbarth*, the Appellants participated in the interviews, and produced the speech in question, at the behest of their employer and as part of their professional responsibilities as employees of the 41B District Court. As such, their comments regarding

12

the work habits of Judge Cannon were not made "as citizens." Consequently, Appellants have no First Amendment cause of action and summary judgment was therefore properly granted.

As we have determined that Appellants spoke pursuant to their employment responsibilities, we need not address the district court's holding that the speech at issue did not touch on matters of public concern, or alternatively, that Judge Davis would be entitled to qualified immunity against this claim as a reasonable official could conclude that the speech at issue constituted false statements knowingly or recklessly made. *See Weisbarth*, 499 F.3d at 546.

### D. Fourteenth Amendment Due Process

Appellants contend that the 41B District Court terminated their employment in contravention of the Due Process Clause of the Fourteenth Amendment when it failed to provide them with pre- or post-termination hearings. The Fourteenth Amendment's guarantee of procedural due process assures that the deprivation of life, liberty, or property will not be effectuated without "notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1986) (internal quotation omitted). When considering a claim for violation of due process rights, we engage in a two-step analysis: we determine first "whether a protected property interest exists," and then determine "what procedures are required to protect that interest." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004).

Appellants' procedural due process claim depends on their having had a property right in continued employment; if they did, the 41B District Court could not deprive them

of this property without due process. *See Loudermill*, 470 U.S. at 538. To determine whether Appellants had such an interest, we look to state law. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."). A showing that a public employee may be fired only for cause is sufficient to satisfy the first step of the analysis. *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004).

"Generally, and under Michigan law by presumption, employment relationships are terminable at the will of either party." *Lytle v. Malady*, 579 N.W.2d 906, 910 (Mich. 1998). However, this presumption of employment at will can be overcome by "proof of either a contract provision for a definite term of employment, or one that forbids discharge absent just cause." *Id.* The Michigan Supreme Court has recognized three ways a discharged public employee may prove such contractual terms:

> (1) proof of a "contractual provision for a definite term of employment or a provision forbidding discharge absent just cause;" (2) an express agreement, either written or oral, regarding job security that is clear and unequivocal; or (3) a contractual provision, implied at law, where an employer's policies and procedures instill a "legitimate expectation" of job security in the employee.

*Id.* at 911 (quoting *Rood v. Gen. Dynamics Corp.*, 507 N.W.2d 591, 597, 598 (Mich. 1993), and *Toussaint v. Blue Cross and Blue Shield*, 292 N.W. 2d 880, 892 (Mich. 1980)). As there are no written employment contracts, or express agreements at issue in this case, if Appellants are to overcome the presumption of at-will employment, they must do so under the "legitimate expectations" theory.

14

Under Michigan law, courts must undertake a two-step inquiry to evaluate legitimate-expectation claims. *Lytle*, 579 N.W.2d at 911. First, the court must decide "*what*, if anything, the employer has promised." *Rood*, 507 N.W.2d at 606. If the court concludes that a promise has been made, "the second step is to determine whether the promise is reasonably capable of instilling a legitimate expectation of just-cause employment in the employer's employees." *Id.* at 607. The Michigan Supreme Court has cautioned that not all policy statements will constitute promises: "[a] lack of specificity of policy terms or provisions, or a policy to act in a particular manner as long as the employer so chooses, is grounds to defeat any claim that a recognizable promise in fact has been made." *Lytle*, 579 N.W.2d at 911.

Appellants argue that there exists a confluence of facts which establish that Judge Cannon's policies constituted a promise of just-cause employment. Those facts are: (1) that Judge Cannon was solely responsible for adopting and implementing policies related to employee termination at the Clinton Township branch of 41B District Court; (2) that Judge Cannon adopted and consistently enforced a just-cause employment policy which he communicated to all his employees; and (3) that the Appellants understood that Judge Cannon's just-cause policy applied to them. Appellants contend that these facts are established through their own deposition testimony, and the deposition testimony and affidavit of Judge Cannon. Appellees counter that the deposition testimony relied on by Appellants, and the affidavits of former and current 41B District Court employees who are not party to this suit, establish that Judge Cannon not only made no promises to his employees, and implemented no definite policy regarding their employment status, but even made sure, at staff meetings, to remind his employees that they were employed "at

15

will."

Thus, there exists a direct conflict in the evidence regarding the exact contours of the termination policy - if any existed - employed by Judge Cannon, and whether such a policy was ever communicated to, and understood by, all of his employees. This is a genuine issue of material fact which requires further development of the record and cannot be properly resolved on summary judgment. As such, the district court erred in dismissing Appellants' procedural due process claims.

### E. Prospective Injunctive Relief

Appellants assert that the district court erred in dismissing their claims for prospective injunctive relief - e.g., injunction against further retaliation and reinstatement - against Judge Davis on the grounds that Appellants failed to establish that Judge Davis could be held liable in her official capacity as a "person" under § 1983. The district court relied upon *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the proposition that in order to state a claim against a state official in their official capacity, Appellants had to establish that Judge Davis' acts represented an "official policy or custom" of the 41B District Court. This reliance was misplaced, as *Monell*, which established the circumstances under which a municipality may be held vicariously liable as a person under § 1983 for injuries inflicted by its employees pursuant to a government policy or custom, is not relevant to whether a state official, sued in her official capacity, qualifies as a "person" under § 1983.

It is settled law that "[a] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for

16

prospective relief are not treated as actions against the State.'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)); *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Sutton v. Evans*, 918 F.2d 654, 657 (6th Cir. 1990) (stating that there is "ample room for an action against state officials insofar as it seeks prospective relief allowed by the Eleventh Amendment").

Accordingly, we reverse the district court's dismissal of Appellants' claims for prospective injunctive relief against Judge Davis in her official capacity, and remand for further proceedings.

### III.   CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment on the issue of First Amendment retaliation, but **REVERSE** the district court's grant of summary judgment dismissing (1) 41B District Court as a party on the grounds of sovereign immunity; (2) Appellants' Fourteenth Amendment procedural due process  claims; and (3) Appellants' claims for prospective injunctive relief against Chief Judge Davis in her official capacity. Accordingly, we **REMAND** for further proceedings consistent with this opinion.

**ALICE M. BATCHELDER, Circuit Judge, concurring in part and dissenting in part.** I agree with the majority opinion's conclusion that the district court's judgment with regard to the First Amendment retaliation claim should be affirmed, but I would affirm the district court's judgment in its entirety. To begin with, although I agree that the defendants have not definitively demonstrated that the state would be liable to pay any money judgment that the plaintiffs might recover, the responsibility for payment is but one factor — albeit often the weightiest one — we must consider in determining whether 41B District Court is an arm of the state for purposes of 11th Amendment immunity. Here, however, both the Michigan Constitution and Michigan statutory provisions weigh heavily in favor of a finding that 41B is in fact an arm of the state. *See* Mich. Const. Art. VI, § 1 (Vesting the "judicial power of the state" in "*one* court of justice" that is divided into several divisions, each devoting its attention to a certain level of judicial administration (emphasis added)); Mich Const. Art. VI, § 4 (Vesting the Supreme Court of Michigan with "*general superintending control over all courts*" (emphasis added)); Mich. Comp. Laws § 600.151 (Reiterating Mich. Const. Art. VI, § 1); Mich. Comp. Laws § 600.8101(1) (Establishing *one* district court for the State of Michigan, and dividing that court into judicial districts "each of which is an administrative unit subject to the superintending control of the supreme court." (emphasis added)); Mich. Comp. Laws § 600.8221 (Making clear that the local control of district courts is "subject to the supervision of the supreme court"); *see also Judges of the 74th Judicial Dist. v. County of Bay*, 190 N.W.2d 219, 224 (Mich. 1971) ("Michigan has but one district court. For the administration of the district court, the state is divided into judicial districts."); *Judicial Attys. Ass'n v. State*, 459 Mich. 291, 299 (Mich. 1998) ("Despite the

18

complications of the trial court environment, the case law, taken as a whole, has come to strongly affirm that the fundamental and ultimate responsibility for all aspects of court administration, including operations and personnel matters within the trial courts, resides within the inherent authority of the judicial branch [of the State].").  In light of those provisions, and the case law interpreting them, I would hold that 41B is, as a matter of law, an arm of the state and is therefore immune from suit in federal court, and is not a proper defendant in an action brought pursuant to 42 U.S.C. § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) ("[A] State is not a person within the meaning of § 1983.").

More importantly, I would hold that the plaintiffs did not present evidence from which the trier of fact could conclude that they had a property interest in their employment. "Generally, and under Michigan law by presumption, employment relationships are terminable at the will of either party." *Lytle v. Malady*, 458 Mich. 153, 163 (Mich. 1998). In my view, the plaintiffs demonstrated, at best, that Judge Cannon, as a general practice, utilized a progressive discipline process and likely intended to discharge employees for good cause; they did not present evidence that Judge Cannon in fact had any established progressive discipline formula that he applied or any specific policy governing employee discharge, or that he was — or even believed that he was — actually bound by any such formula or policy.  "A lack of specificity of policy terms or provisions, or a policy to act in a particular manner as long as the employer so chooses, is grounds to defeat any claim that a recognizable promise has in fact been made." *Lytle*, 458 Mich. at 165.

Nor did the plaintiffs present evidence supporting their claim that they had a legitimate expectation that they could be discharged only for just cause.  Even if Judge

19

Cannon did, as plaintiffs contend, adopt the Township's Disciplinary Action Procedure ("TDAP"), that fact is not sufficient to rebut Michigan's at-will presumption. Under the TDAP's progressive discipline process, the employer retains discretion over whether to use the process at all and how to implement the process. Furthermore, by its own terms, the TDAP's just-cause provisions apply to only civil service and union employees. This means that even if the Court adopted TDAP, 41B's employees would not have had a legitimate expectation of just-cause discipline because none of them were civil service or union employees. For the plaintiffs in this case to have benefitted from TDAP's provisions, the Court would have had to adopt and modify TDAP's provisions; at the very least, the Court would have had to make the just-cause provisions apply to non-civil service and non-union employees. But the Court would have had to explain these modifications to its employees, including which portions of TDAP were modified and how the modified provisions would be applied. The record does not contain any evidence that such modifications or explanations ever took place. At best, plaintiffs provided evidence that they had a subjective belief that they would be discharged only for cause, and a subjective belief is wholly insufficient to establish a protected property interest. *See Grow v. General Products, Inc.*, 457 N.W.2d 167, 169 (Mich. Ct. App. 1990) ("It is well settled that a mere subjective expectation on the part of an employee is insufficient to create a jury question as to whether an employment contract may be terminated only for just cause.").

Finally, because the plaintiffs have not presented evidence that they had a property interest in their jobs or that they had a legitimate expectation that they could be discharged only for good cause, they have no basis upon which they may be granted prospective injunctive relief against Judge Davis.

20